**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

TORY LAMONT HUDSON,

*Defendant-Appellant.*

No. 07-4948

Appeal from the United States District Court
for the District of South Carolina, at Florence.
R. Bryan Harwell, District Judge.
(4:06-cr-01244-RBH)

Argued: January 25, 2012

Decided: March 7, 2012

Before WILKINSON, NIEMEYER, and SHEDD,
Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the
opinion, in which Judge Wilkinson and Judge Shedd joined.

**COUNSEL**

**ARGUED:** Michael Williams Chesser, Aiken, South Carolina, for Appellant. Robert Frank Daley, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** William N. Nettles, United States Attorney, Columbia, South Carolina, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

This case presents the question of whether Tory Hudson's sentence for possessing a firearm in violation of 18 U.S.C. § 922(g)(1) was properly enhanced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), on the basis of three previous felony convictions when two of the convictions were for violation of Florida's "fleeing-or-eluding" statute, Fla. Stat. § 316.1935(2) (punishing one who "willfully flees or attempts to elude a . . . [marked] law enforcement patrol vehicle . . . with siren and lights activated"). More specifically, we must determine whether a violation of the Florida statute is a "violent felony" as that term is used in ACCA, 18 U.S.C. § 924(e)(2)(B).

The district court, applying the law as it existed in 2007, determined that Hudson's previous convictions under the Florida statute were indeed violent felonies and, accordingly, sentenced Hudson as an armed career criminal to 180 months' imprisonment. Hudson appealed the court's ruling qualifying the Florida convictions as predicate offenses under ACCA.

On appeal, the parties' briefing has followed a protracted course occasioned by the intervening Supreme Court decisions in *Begay v. United States*, 553 U.S. 137 (2008); *Chambers v. United States*, 555 U.S. 122 (2009); and *Sykes v.*

*United States*, 131 S. Ct. 2267 (2011). Now, applying *Sykes*, the most recent of these decisions, we affirm. We also reject Hudson's contention that ACCA's "residual clause," contained in 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague.

I

Following a traffic stop, Olanta (South Carolina) police arrested Hudson for driving with a suspended license and, during a subsequent search of his vehicle, uncovered a .32 caliber revolver and ammunition. Hudson pleaded guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On September 5, 2007, the district court sentenced Hudson as an armed career criminal to 180 months' imprisonment, relying on one prior conviction for possession of cocaine with intent to distribute and two prior no-contest pleas to violating Florida's "fleeing-or-eluding" statute, Fla. Stat. § 316.1935(2). Hudson objected to the use of the two fleeing-or-eluding convictions, contending that they were not violent felonies under ACCA. The district court overruled the objections, applying *United States v. James*, 337 F.3d 387 (4th Cir. 2003), where we held that a conviction under South Carolina law for failing to stop for a blue light was a violent felony.

On appeal, Hudson has challenged the district court's ACCA ruling. After he filed his brief, however, the Supreme Court decided *Begay v. United States*, 553 U.S. 137 (2008), and Hudson filed a supplemental brief contending that under *Begay*, a violation of the Florida fleeing-or-eluding statute was not a violent felony.

Shortly thereafter, Hudson filed a notice under Federal Rule of Appellate Procedure 28(j), bringing to the court's attention supplemental authority. He noted that in *United States v. Harrison*, 558 F.3d 1280 (11th Cir. 2009), the Eleventh Circuit held that a violation of the Florida statute at issue

here, § 316.1935(2), was not sufficiently aggressive or violent to qualify as a "violent felony" under ACCA. In response to Hudson's notice, we directed the parties to file supplemental briefs. The government then argued that our decision in *United States v. Roseboro*, 551 F.3d 226 (4th Cir. 2009), which was handed down a month earlier than *Harrison*, controlled the outcome of this case. In *Roseboro*, we concluded that *James* had been overruled because the analysis we applied in that case was inconsistent with the test adopted in *Begay*. *Roseboro*, 551 F.3d at 233. Nonetheless, we held that an *intentional* violation of South Carolina's failure to stop for a blue light law could still be a violent felony for ACCA purposes. *Id.* at 240.

Several months later, in light of the Supreme Court's decision in *Chambers v. United States*, 555 U.S. 122 (2009), we overruled *Roseboro* with our decision in *United States v. Rivers*, 595 F.3d 558 (4th Cir. 2010). We concluded that the modified categorical approach used in *Roseboro* could not be applied to South Carolina's blue light statute to determine whether a violation of that statute was a violent felony. *Rivers*, 595 F.3d at 564. Accordingly, we rejected use of the South Carolina conviction for purposes of an ACCA sentence enhancement. *Id.* at 565.

Before acting on our *Rivers* decision in this case, however, we placed Hudson's appeal in abeyance pending the Supreme Court's decision in *Sykes*, which was scheduled to address whether a violation of Indiana's blue light law was a violent felony under ACCA. On June 9, 2011, the Supreme Court handed down its decision in *Sykes*, finding that a violation of the Indiana statute was indeed a violent felony for purposes of ACCA. 131 S. Ct. at 2276-77. We again requested supplemental briefing from the parties to address the impact of *Sykes* on this case, and, after receiving this briefing, we held oral argument.

The issues Hudson now presents are whether his two prior convictions for violating Florida's fleeing-or-eluding statute,

§ 316.1935(2), are violent felonies for purpose of ACCA and, if so, whether the residual clause in ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague.

## II

A violation of 18 U.S.C. § 922(g)(1), for which Hudson was convicted in this case, ordinarily carries a maximum sentence of 10 years' imprisonment. 18 U.S.C. § 924(a)(2). ACCA, however, provides for a sentence enhancement based on the defendant's criminal history, providing that a person who violates § 922(g) and has "three previous convictions . . . for a violent felony or a serious drug offense, or both," must be sentenced to at least 15 years' imprisonment. *Id.* § 924(e)(1). The Act defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that:

(i)   has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii)   is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

*Id.* § 924(e)(2)(B) (emphasis added).

The parties agree that the previous fleeing-or-eluding convictions used to enhance Hudson's sentence did not involve either the "use, attempted use, or threatened use of physical force against the person of another," as provided in paragraph (B)(i), and are not burglary, arson, extortion, or a crime that "involves the use of explosives," as provided in paragraph (B)(ii). *See* 18 U.S.C. § 924 (e)(2)(B). The question is whether these convictions are violent felonies as defined in the "residual clause" of paragraph (B)(ii), which qualifies as

a violent felony any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924 (e)(2)(B)(ii).

The Supreme Court most recently applied ACCA's residual clause in *Sykes v. United States*, 131 S. Ct. 2267 (2011), where it held that a defendant's previous conviction under Indiana law for using a vehicle to "knowingly or intentionally . . . flee[ ] from a law enforcement officer" fell within ACCA's residual clause and was thus a "violent felony." *Id.* at 2270, 2277 (internal quotation marks omitted) (citing Ind. Code § 35-44-3-3). The Court focused its analysis on the statutory language to determine whether a subject crime was sufficiently comparable *in degree of risk* to the offenses enumerated in § 924(e)(2)(B)(ii)—burglary, extortion, arson, and crimes involving the use of explosives. It explained that the subject crime "involves the requisite risk" when that crime presents a risk of injury "'comparable to that posed by its closest analog among the enumerated offenses.'" *Id.* at 2273 (quoting *James v. United States*, 550 U.S. 192, 203 (2007)). Applying this risk-based test, the Court concluded that intentional vehicular flight poses a degree of risk at least equal to, if not greater than, the enumerated offenses of burglary and arson. *Id.* at 2273-75.

In reaching this conclusion, the Court rejected Sykes' argument that because Indiana law also criminalized an aggravated form of conduct involving vehicular flight, during which the offender "operates a vehicle in a manner that creates a substantial risk of bodily injury to another person," his conviction for the lesser-included offense of simple intentional vehicular flight—that is, flight without "creat[ing] a substantial risk of bodily injury"—was intended by the Indiana legislature not to be a violent felony. *Id.* at 2276. The Court noted that although Indiana had structured its statute to create two separate offenses—one that included as an element a substantial risk of injury and the other that involved only simple but intentional vehicular flight—both were treated by

the Indiana legislature as crimes of the same magnitude and punished accordingly. *Id.* Moreover, the Court explained that "serious and substantial risks are an inherent part of vehicle flight [and] [u]nder subsection (b)(1)(A), they need not be proved separately to secure a conviction equal in magnitude to those available for other forms of resisting law enforcement with a vehicle that involve similar risks." *Id.* The Supreme Court declined, however, to decide, as the government urged, that it is "irrelevant under the residual clause whether a crime is a lesser included offense even in cases where that offense carries a less severe penalty than the [greater] offense that includes it." *Id.* at 2277.

Although *Sykes* at first blush appears to be readily dispositive of Hudson's appeal, Hudson correctly notes that the distinction between the Florida statute under which he was convicted and the Indiana statute at issue in *Sykes* requires further analysis. Specifically, as Hudson points out, the Florida fleeing-or-eluding statute, unlike the Indiana statute, penalizes conduct having different levels of risk *with different punishments*, and, accordingly, Hudson's case presents the issue that the Supreme Court indicated in *Sykes* it was not deciding.

Florida's fleeing-or-eluding statute differentiates between several types of fleeing-and-eluding behavior. The base offense, stated in § 316.1935(2), punishes a person who "willfully flees or attempts to elude a . . . [marked] law enforcement patrol vehicle . . . with siren and lights activated" and provides for imprisonment for up to 5 years. Punishment is increased to a maximum of 15 years if, as provided in § 316.1935(3)(a), a person "[d]rives [during the course of flight] at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property." And finally, vehicular flight is punishable for up to 30 years' imprisonment if, as stated in § 316.1935(3)(b), the driver, in addition to driving recklessly or at high speed, "causes serious bodily injury or death to another person." Florida thus created

three separate crimes with three separate penalties. *See Sykes*, 131 S. Ct. at 2276.

Nonetheless, applying the *Sykes* analysis to the base offense at issue here, § 316.1935(2), inevitably leads to the conclusion that the prohibited conduct of intentional vehicular fleeing itself, without more, is a violent felony. In *Sykes*, the Court stated unequivocally that "risk of violence is inherent to vehicle flight." 131 S. Ct. at 2274. It emphasized that "[w]hen a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense." *Id.* at 2273. Moreover, "[t]he attempt to elude capture is a direct challenge to an officer's authority. It is a provocative and dangerous act that dares, and in a typical case, requires, the officer to give chase." *Id.* And "[b]ecause an accepted way to restrain a driver who poses dangers to others is through sei-zure, officers pursuing fleeing drivers may deem themselves duty bound to escalate their response to ensure the felon is apprehended." *Id.* "Confrontation with police is the expected result of vehicle flight." *Id.* at 2274.

Based on a review of statistical information, the *Sykes* Court also found that vehicular flight presented a degree of risk at least as great as the risks associated with the enumer-ated offenses of arson and burglary. *Id.* at 2273-75 (noting that police pursuits produced a rate of injury to non-suspects of 4 per 100 pursuits, compared to 3.2 injuries per 100 burgla-ries, and 3.3 injuries per 100 arsons). And, importantly, the Court's assessment of the risks presented by vehicular flight was not qualified by any requirement of high speed or reck-lessness. Nor should it have been under the Court's analysis. As the Court explained, "Even if the criminal attempting to elude capture drives without going full speed or going the wrong way, he creates the possibility that police will, in a legitimate and lawful manner, exceed or almost match his speed or use force to bring him within their custody." *Sykes*,

131 S. Ct. at 2273. Even pursuits involving "safe" drivers will almost always end in a confrontation between the driver and police. The core dangers associated with willful vehicular flight are thus present even absent aggravating factors.

Relying on the Eleventh Circuit's decision in *Harrison*, Hudson presses the argument that the Florida legislature's decision to create a tiered punishment scheme reflects an implicit judgment that fleeing or eluding *without* high speed or wanton disregard for safety does not present risks that are comparable to the risks included in the residual clause as enumerated in § 924(e)(2)(B)(ii) offenses. This argument rests on the presumption that because Florida defined high-risk crimes in §§ 316.1935(3)(a) and 316.1935(3)(b), it correspondingly defined a minimal risk crime in § 316.1935(2), which criminalizes simple but intentional fleeing or eluding, so that the risk inherent in that offense is not sufficient to amount to a violent felony for purposes of ACCA. While it may be true that the conduct underlying violations of §§ 316.1935(3)(a) and 316.1035(3)(b) presents greater risks of violence and injury than does conduct underlying a violation of the base offense in § 316.1935(2), it does not follow that a violation of § 316.1935(2) does not also present a substantial risk of injury to another. As we have already detailed above, there are several reasons by which to conclude that intentional vehicular flight *in any manner* poses a potential level of risk that is sufficient to render the offense a violent felony. Given the Supreme Court's recognition of the inherent risk in intentional vehicular flight, the State's decision to punish some forms of vehicular flight more seriously than others has little bearing on the analysis. The tiered statutory structure simply provides for increasing punishment with increasing levels of risk.

In short, we conclude that Hudson's violations of Florida Statute § 316.1935(2), punishing a person who "willfully flees or attempts to elude a . . . [marked] law enforcement patrol vehicle . . . with siren and lights activated," qualify as predi-

cate offenses under the residual clause in ACCA, 18 U.S.C. § 924(e)(2)(B)(ii).

### III

Hudson also contends that the residual clause in ACCA, § 924(e)(2)(B)(ii), is unconstitutionally vague. This argument fails for two reasons. First, Hudson failed to raise this vagueness objection in his opening brief so that it is now properly considered waived. *See United States v. Leeson*, 453 F.3d 631, 638 n.4 (4th Cir. 2006).

Second, notwithstanding his waiver, the Supreme Court has consistently declined to find the residual clause void for vagueness. Most recently in *Sykes*, the Court noted that although ACCA's "general and qualitative" approach to defining violent felonies "may at times be more difficult for courts to implement, it is within congressional power to enact." *Sykes*, 131 S. Ct. at 2277.

For the reasons given, we affirm the judgment of the district court.

*AFFIRMED*