PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-5001

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROMELUS PENTROY MARTIN,

Defendant - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Peter J. Messitte, Senior District
Judge.  (8:11-cr-00685-PJM-1)

Argued: January 30, 2014                    Decided:  June 5, 2014

Before TRAXLER, Chief Judge, DIAZ, Circuit Judge, and Liam
O'GRADY, United States District Judge for the Eastern District
of Virginia, sitting by designation.

Vacated and remanded by published opinion.  Chief Judge Traxler
wrote the majority opinion, in which Judge Diaz joined.  Judge
Diaz wrote a separate concurring opinion.  Judge O'Grady wrote a
dissenting opinion.

**ARGUED:** Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Greenbelt, Maryland, for Appellant.  Paul Nitze, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON
BRIEF:** James Wyda, Federal Public Defender, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant.
Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Baltimore, Maryland, for Appellee.

TRAXLER, Chief Judge:

Romelus Pentroy Martin appeals the 77-month sentence imposed after he pleaded guilty to unlawful possession of a firearm by a convicted felon.  See 18 U.S.C. § 922(g)(1).  We agree with Martin that the district court erred by increasing his sentence after determining that Martin's prior conviction for fourth-degree burglary constituted a crime of violence under U.S.S.G. § 2K2.1(a)(2), and we therefore vacate Martin's sentence and remand for resentencing.

I.

The Sentencing Guideline applicable to § 922(g) violations sets a base offense level of 24 for defendants who commit the offense after "sustaining at least two felony convictions of . . . a crime of violence," U.S.S.G. § 2K2.1(a)(2), and a base offense level of 20 for defendants with only one prior conviction for a crime of violence, see id. § 2K2.1(a)(4)(A).

When Martin pleaded guilty to the felon-in-possession charge in August 2012, he had three prior convictions, including a 2007 Maryland conviction for conspiracy to commit robbery and a 2009 Maryland conviction for fourth-degree burglary.  The district court held that both the 2007 conviction and the 2009 conviction amounted to crimes of violence as defined by the Guidelines, and the court therefore assigned Martin a base-offense level of 24.  After adjusting the offense level to

2

reflect Martin's acceptance of responsibility, the district court determined that Martin's advisory sentencing range was 77-96 months, and the court sentenced Martin to 77 months' imprisonment.

On appeal, Martin concedes that his 2007 conviction was properly treated as a crime of violence, but he contends that the district court erred by treating the 2009 conviction as a crime of violence. If the district court had not treated the 2009 conviction as a crime of violence, Martin's base-offense level would have been 20 instead of 24, and his advisory sentencing range would have been 51-63 months.

## II.

For purposes of U.S.S.G. § 2K2.1, a "crime of violence" is defined as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a); see id. § 2K2.1, cmt. 1 (defining "crime of violence" through cross-reference to § 4B1.2(a)). When determining whether a prior conviction qualifies as a crime of violence under the Guidelines, we apply a categorical approach,

3

focusing on "the fact of conviction and the statutory definition of the prior offense" rather than the conduct underlying the offense. Taylor v. United States, 495 U.S. 575, 602 (1990); see United States v. Carthorne, 726 F.3d 503, 511 (4th Cir. 2013), cert. denied, 134 S. Ct. 1326 (Feb. 24, 2014).[1]

Maryland's fourth-degree burglary statute encompasses four separate crimes: breaking and entering the dwelling of another, see Md. Code Ann., Crim. Law § 6-205(a); breaking and entering the storehouse of another, see id. § 6-205(b); being in a dwelling or storehouse of another (or the yard or other area belonging to such dwelling or storehouse) with the intent to commit theft, see id. § 6-205(c); and possessing burglar's tools with intent to use, see id. § 6-205(d). Although there was some disagreement below, the parties now agree that the relevant charging documents establish that Martin was convicted of violating subsection (a), which provides that "[a] person may not break and enter the dwelling of another." Id. § 6-205(a).

Because fourth-degree burglary does not have "as an element the use, attempted use, or threatened use of physical force

---

[1] While the Taylor Court was interpreting "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), we generally apply Taylor's categorical approach when considering prior-conviction-based enhancements under the Guidelines. See, e.g., Carthorne, 726 F.3d at 511 n.6.

4

against the person of another," it is not a crime of violence under U.S.S.G. § 4B1.2(a)(1).

And as the government concedes, the crime likewise does not constitute the enumerated crime of "burglary of a dwelling." U.S.S.G. § 4B1.2(a)(2). Under the categorical approach, "a prior conviction constitutes a conviction for [an] enumerated offense if the elements of the prior offense correspond in substance to the elements of [an] enumerated offense." United States v. Cabrera-Umanzor, 728 F.3d 347, 350 (4th Cir. 2013) (internal quotation marks and alteration omitted). "[W]here Congress has not indicated how a prior offense enumerated in a sentencing enhancement statute is to be interpreted, it should be understood to refer to 'the generic, contemporary meaning' of the crime." United States v. Rangel–Castaneda, 709 F.3d 373, 376 (4th Cir. 2013) (quoting Taylor, 495 U.S. at 598).

In Taylor, the Supreme Court defined generic "burglary" under the ACCA as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Taylor, 495 U.S. at 598. Generic "burglary of a dwelling" under the Guidelines follows the Taylor definition, "with the additional requirement that a burglary qualifying as a 'crime of violence' must involve a dwelling." United States v. Bonilla, 687 F.3d 188, 190 n.3 (4th Cir. 2012), cert. denied, 134 S. Ct. 52 (Oct. 7, 2013). Because § 6-205(a) does not

5

require that the defendant have the intent to commit a crime when he enters the dwelling, fourth-degree burglary is not generic burglary of a dwelling under § 4B1.2(2). Accordingly, Martin's 2009 conviction is a crime of violence only if it satisfies the requirements of the "residual clause" of § 4B1.2(a)(2) – if the offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). We turn to that inquiry now.

### III.

When determining whether a prior conviction falls within the residual clause, our inquiry remains a categorical one, "consider[ing] whether the <u>elements of the offense</u> are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." <u>James v. United States</u>, 550 U.S. 192, 202 (2007). The parties disagree, however, about the precise scope of the residual-clause inquiry.

In <u>James</u>, the Supreme Court explained that the enumerated offenses preceding the residual clause "provide a baseline against which to measure <u>the degree of risk</u> that a nonenumerated offense must 'otherwise' present in order to qualify" as a crime of violence. <u>Id.</u> at 208 (emphasis added). The Court held that attempted burglary is a violent felony under the ACCA's residual clause because the risk posed by an attempted burglary crime

6

presents a risk of physical injury "comparable to that posed by its closest analog among the enumerated offenses--here, completed burglary." Id. at 203.

In Begay v. United States, 553 U.S. 137 (2008), a case involving a prior conviction for driving under the influence, the Court added an additional layer to the degree-of-risk analysis. The Court held that, in addition to establishing the baseline degree of risk, the enumerated offenses also "illustrate the kinds of crimes that fall within the statute's scope. Their presence indicates that the statute covers only similar crimes, rather than every crime that presents a serious potential risk of physical injury to another." Id. at 142 (first emphasis added; internal quotation marks omitted). The Begay Court thus held that the enumerated offenses must be understood "as limiting the crimes that [the residual clause] covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." Id. at 143 (emphasis added). The Court concluded that the ACCA's enumerated crimes "all typically involve purposeful, violent, and aggressive conduct," id. at 144-45 (internal quotation marks omitted), and the Court distinguished those crimes from offenses that -- like DUI -- "impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all," id. at 145. Concluding that DUI is not

7

purposeful, violent, or aggressive, the Court held that it was not similar in kind to the enumerated offenses and thus was not a crime of violence. See id. at 145-46.

In Sykes v. United States, 131 S. Ct. 2267 (2011), however, the Court returned to the comparable-degree-of-risk approach, explaining that "[i]n general, levels of risk divide crimes that qualify [under the residual clause] from those that do not." Id. at 2275 (emphasis added). As to the Begay test, the Court stated that

> [t]he phrase "purposeful, violent, and aggressive" has no precise textual link to the residual clause, which requires that an ACCA predicate "otherwise involve conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B)(ii). The Begay phrase is an addition to the statutory text. In many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of physical injury to others tend to be one and the same. As between the two inquiries, risk levels provide a categorical and manageable standard that suffices to resolve the case before us.

> Begay involved a crime akin to strict liability, negligence, and recklessness crimes; and the purposeful, violent, and aggressive formulation was used in that case to explain the result. The felony at issue here is not a strict liability, negligence, or recklessness crime and because it is, for the reasons stated and as a categorical matter, similar in risk to the listed crimes, it is a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another."

Id. at 2275-76.

Martin argues that Begay governs our analysis of the residual clause question, such that the offense-level enhancement may be sustained only if fourth-degree burglary is (1) similar in kind to the enumerated offenses – i.e., purposeful, violent, and aggressive; and (2) the degree of risk it poses is roughly similar to the degree of risk posed by burglary, the closest enumerated-crime analog. The government, however, argues that an inquiry into the degree of risk is all that is required after Sykes. In the government's view, Sykes limited application of Begay's similar-in-kind standard to crimes akin to strict liability, negligence, and recklessness crimes. Because the crime at issue in this case requires the defendant to know that his entry was unauthorized, see Dabney v. State, 858 A.2d 1084, 1090-91 n.2 (Md. Ct. Spec. App. 2004), it is not a strict-liability crime, and the government therefore contends that Begay is inapplicable.

Most of the circuits addressing the issue have held that Sykes limited Begay's similar-in-kind inquiry to crimes predicated on strict liability, negligence, or recklessness. See, e.g., United States v. Chitwood, 676 F.3d 971, 979 (11th Cir.) ("Sykes makes clear that Begay's 'purposeful, violent, and aggressive' analysis does not apply to offenses that are not strict liability, negligence, or recklessness crimes. . . ."), cert. denied, 133 S. Ct. 288 (2012); accord United States v.

9

Spencer, 724 F.3d 1133, 1139 (9th Cir. 2013); Brown v. Caraway, 719 F.3d 583, 593 (7th Cir. 2013); United States v. Bartel, 698 F.3d 658, 662 (8th Cir. 2012), cert. denied, 133 S. Ct. 1481 (Feb. 25, 2013); Harrington v. United States, 689 F.3d 124, 135-36 (2d Cir. 2012); United States v. Rodriguez, 659 F.3d 117, 119 (1st Cir. 2011); United States v. Smith, 652 F.3d 1244, 1247-48 (10th Cir. 2011).

In this circuit, however, we have continued, even after Sykes, to apply Begay's similar-in-kind requirement to residual-clause cases. See Carthorne, 726 F.3d at 515 n.12 ("The Supreme Court has also held that, for an offense to fall within the residual clause, it must be 'roughly similar, in kind as well as in degree of risk posed,' to arson, burglary, extortion, and crimes involving explosives.'" (quoting Begay, 553 U.S. at 143)); United States v. Davis, 689 F.3d 349, 357-58 (4th Cir. 2012) (per curiam) ("[A] crime falls within the residual provision if it involves 'purposeful, violent, and aggressive conduct,' that 'in the ordinary case, presents a serious potential risk of injury to another.'" (quoting Begay, 553 U.S. at 144–45, and James, 550 U.S. at 208)); see also United States v. Hemingway, 734 F.3d 323, 338 (4th Cir. 2013) (declining to apply Begay standard where degree-of-risk inquiry established that prior conviction was not a crime of violence). But see United States v. Hudson, 673 F.3d 263, 265, 267-68 (4th Cir.)

10

(mentioning Begay, but applying only the Sykes degree-of-risk standard when determining that prior conviction amounted to a crime of violence under the ACCA's residual clause), cert. denied, 133 S. Ct. 207 (2012).  Accordingly, we will consider whether Martin's prior conviction for fourth-degree burglary qualifies as a crime of violence under the residual clause of § 4B1.2 under both the degree-of-risk test and the similar-in-kind test, as required by Begay.

### A.  Degree of Risk

Under the degree-of-risk test, a prior conviction amounts to a crime of violence under the residual clause if the risk of physical injury posed by that offense is "roughly similar," Begay, 553 U.S. at 143, or "comparable" to the risk of physical injury "posed by its closest analog among the enumerated offenses," James, 550 U.S. at 203.  "A roughly similar degree of risk means that the prior crime, like the enumerated offenses, creates an immediate, serious, and foreseeable physical risk that arises concurrently with the commission of the crime itself."  United States v. White, 571 F.3d 365, 370 (4th Cir. 2009) (internal quotation marks and alterations omitted).

As it was in James, the enumerated offense of burglary is the closest analog to the fourth-degree burglary conviction at issue in this case.  Accordingly, the question is whether the risk of physical injury posed by the fourth-degree burglary

11

offense is roughly similar to the risk posed by generic burglary.

The Supreme Court has explained that the risk of physical injury associated with generic burglary comes "from the possibility of a face-to-face confrontation between the burglar and a third party -- whether an occupant, a police officer, or a bystander -- who comes to investigate." James, 550 U.S. at 203. The government contends that the same possibility of confrontation is present during the commission of fourth-degree burglary and that the potential risk of physical injury associated with fourth-degree burglary is thus roughly the same as that associated with generic burglary.

Martin, however, contends that the risk of physical injury during a generic burglary comes from the burglar's specific intent to commit a crime. See Taylor, 495 U.S. at 588 ("The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." (emphasis added)). Because fourth-degree burglary does not require an intent to commit a crime at the time of the unlawful entry, Martin argues that there is less risk of violent confrontation.

While Martin's argument is not without force, we agree with the government the potential risk of physical injury arising

12

from the commission of fourth-degree burglary under Md. Code Ann., Crim. Law § 6-205(a) is comparable to that arising from the commission of generic burglary. Critical to this conclusion is the fact that § 6-205(a) requires entry into a dwelling. As this court observed when considering whether the substantively identical statutory predecessor to § 6-205(a) was a crime of violence, dwellings – unlike "'storehouses'" -- are "likely to be occupied." United States v. Custis, 988 F.2d 1355, 1363 (4th Cir. 1993), cert. granted on other grounds, 510 U.S. 913 (1993), and aff'd, 511 U.S. 485 (1994). And because dwellings are likely to be occupied, we concluded in Custis -- even though the statute lacked the intent-to-commit-a-crime element -- that the crime of breaking and entering the dwelling house of another creates "a substantial risk of confrontation." Id. at 1363.[2] This risk of confrontation is precisely the same risk that makes generic burglary a dangerous crime. See Sykes, 131 S. Ct. at

_____

[2] The Custis court held that a conviction for attempted breaking and entering of a dwelling under Md. Code Ann. art. 27, § 31A (repealed 1994) was a crime of violence under the ACCA's residual clause. Because the Custis court's analysis of the residual-clause issue did not follow the approach now dictated by the Supreme Court's later-decided opinions in James, Begay, and Sykes, Custis' ultimate crime-of-violence determination is no longer binding. See, e.g., United States v. Prince-Oyibo, 320 F.3d 494, 498 (4th Cir. 2003) ("Absent an en banc overruling or a superseding contrary decision of the Supreme Court, we, as a circuit panel, are bound by [earlier circuit precedent]."). Those later-decided opinions, however, do not undermine the Custis court's analysis of the nature of, and the risks inherent in, the underlying crime.

13

2273 ("Burglary is dangerous because it can end in confrontation leading to violence."); James, 550 U.S. at 211 ("The risk of physical injury in [generic burglary] occurs when there is a confrontation between the criminal and another person, whether an occupant of the structure, a law enforcement officer or security guard, or someone else.").

Martin argues, however, that an offender who enters a dwelling without a contemporaneous intent to commit a crime would be less likely to respond violently to the discovery of his presence. Even if we accept that argument as true, it typically will not be apparent to the discovering homeowner whether an intruder harbors an additional intent to commit an additional crime, and the homeowner's response to discovering an intruder will likely be the same whether or not the intruder harbors the additional intent. See James, 550 U.S. at 211 (noting that homeowner angered by an attempted burglary "may give chase, and a violent encounter may ensue"). When faced with an angry homeowner taking protective measures, or a police officer responding to a call about suspicious activity, intruders – even those without the specific intent to commit a crime – may well resort to violence in an effort to avoid apprehension. As the Sixth Circuit has explained, the risk of physical injury inherent in such confrontations "lies not only in the intruder's intent, but in their volatility. People do

14

unpredictable things when they unexpectedly encounter burglars in their homes. The burglars often reciprocate. The result is confrontations that present a serious risk of physical injury regardless of the burglar's initial intent." United States v. Skipper, 552 F.3d 489, 493 (6th Cir. 2009) (emphasis added; citation omitted).

Under these circumstances, and given this country's strong tradition of respecting the sanctity of the home and the homeowner's right to exclude others therefrom, we simply cannot conclude that the absence of the intent to commit a crime makes the breaking-and-entering at issue here significantly less risky than generic burglary. Because the same risk of confrontation and resulting physical injury associated with generic burglary arises under the elements of the crime for which Martin was convicted, we believe that the risk of physical injury posed by Martin's offense is comparable to the risk of physical injury posed by generic burglary. See United States v. Hampton, 585 F.3d 1033, 1043 (7th Cir. 2009) (concluding that residential entry under Indiana law, which does not include a felonious-intent element, "is similar in risk to the enumerated offense of burglary because both create a substantial risk that if the offender is confronted by someone inside the home, violence will ensue"); Skipper, 552 F.3d at 493 (conviction under Ohio's fourth-degree burglary statute, which does not require felonious

15

intent at time of entry, is a violent felony under the residual clause of U.S.S.G. § 4B1.2(a)(2)).

## B. Similar In Kind

Our conclusion that fourth-degree burglary of a dwelling and generic burglary have similar degrees of risk does not end our inquiry, as Begay requires that the prior conviction must also be similar in kind to the enumerated crimes. See Begay, 553 U.S. at 143.

Four crimes are enumerated in the text of § 4B1.2(a)(2) -- burglary of a dwelling, arson, extortion, and crimes involving the use of explosives. The commentary to § 4B1.2(a) "adds six crimes to the list of example crimes for Guidelines cases -- murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, and robbery." United States v. Peterson, 629 F.3d 432, 439 (4th Cir. 2011); see U.S.S.G. § 4B1.2(a) cmt. 1. Because this "enlarged array of example crimes" all involve conduct that is properly viewed as purposeful, violent, and aggressive, Peterson, 629 F.3d at 439, the Begay inquiry as applied to the Guidelines requires "that a qualifying predicate offense under § 4B1.2(a) must also be purposeful, violent, and aggressive," id.

To be purposeful, violent, and aggressive, a crime must have a mens rea of at least recklessness; crimes that can be committed through negligent conduct do not satisfy the Begay

16

inquiry.  See id. at 439-40 (applying Begay to conclude that involuntary manslaughter under North Carolina law is not a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2) because the crime can be committed through negligent conduct); United States v. Rivers, 595 F.3d 558, 565 (4th Cir. 2010) (South Carolina blue-light statute not purposeful, aggressive, and violent under Begay because the statute "explicitly criminalizes a broad swath of unintentional conduct").  Relying on these principles, Martin argues that a violation of § 6-205(a) cannot be characterized as purposeful because the statute can be violated by negligent conduct.  We agree.

As Maryland's highest court has made clear, the statute at issue in this case requires proof of the defendant's "general criminal intent to break and enter" the dwelling.  Warfield v. State, 554 A.2d 1238, 1250 (Md. 1989) (considering § 6-205(a)'s substantively identical statutory predecessor).  Thus, "to be culpable" under the statute, the defendant must have entered the dwelling "with an awareness that it was unwarranted -- lacking authority, license, privilege, invitation, or legality."  Id. at 1251.

The Warfield court explained that the statute's knowledge requirement "is designed primarily to exclude from criminal liability both the inadvertent trespasser and the trespasser who believes that he has received an express or implied permission

17

to enter or remain." Id. at 1250 (quoting Model Penal Code § 221.2 (1985)). Accordingly, it is an affirmative defense to a § 6-205(a) charge "if the actor reasonably believed that the owner of the premises would have licensed him to enter." Green v. State, 705 A.2d 133, 139 (Md. Ct. Spec. App. 1998) (internal quotation marks and alterations omitted)); see also Warfield, 553 A.2d at 1251 ("To make culpable the inadvertent trespasser and the trespasser who entertains a reasonable belief that his conduct was proper would be unreasonable, illogical, inconsistent with common sense, and contrary to the interests of justice." (emphasis added)).

Because the defense requires a reasonable belief of permission to enter the dwelling, a defendant who unreasonably believed that he had permission to enter would be guilty under § 6-205(a). That is, a defendant who reasonably believed that he had permission to enter would not have the awareness that his entry was unwarranted, while a defendant who unreasonably believed he had permission would be deemed to be aware that his entry was unwarranted. It is therefore clear that a conviction under § 6-205(a) may be based on negligent rather than intentional conduct. See Bane v. State, 533 A.2d 309, 317 (Md. Ct. Spec. App. 1987) (Because "breaking and entering involves no felonious or larcenous intent, it is a crime of general intent that includes within its scope a variety of acts, including some

18

that are reckless or negligent. A conviction for that offense may result either from a well-planned scheme-or merely rash, impetuous conduct of a defendant." (citation omitted)). And because the statute may be violated by negligent conduct, a violation of § 6-205(a) is not purposeful and thus is not similar in kind to the Guidelines' enumerated crimes. Martin's 2009 conviction under § 6-205(a) therefore cannot be treated as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2). See Peterson, 629 F.3d at 439; Rivers, 595 F.3d at 565.

## IV.

Although we conclude that Md. Code Ann., Crim. Law § 6-205(a) proscribes conduct that presents a degree of risk of physical injury that is roughly similar to the risk of injury posed by generic burglary, the statute can be violated by negligent conduct and therefore is not similar in kind to the offenses enumerated in § 4B1.2 of the Sentencing Guidelines. The district court therefore erred by treating Martin's 2009 conviction for violating § 6-205(a) as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2).[3] Accordingly, we

---

[3] Martin also contends that the residual clause is unconstitutionally vague. That argument, however, has already been rejected by this court and by the Supreme Court. See Sykes v. United States, 131 S. Ct. 2267, 2277 (2011) (Although the "general and qualitative" nature of the residual clause "may at
(Continued)

19

hereby vacate Martin's sentence and remand for resentencing consistent with this opinion.

VACATED AND REMANDED

---

times be . . . difficult for courts to implement," the residual clause "states an intelligible principle and provides guidance that allows a person to conform his or her conduct to the law." (internal quotation marks omitted)); United States v. Hudson, 673 F.3d 263, 268-69 (4th Cir.) ("[T]he Supreme Court has consistently declined to find the residual clause void for vagueness."), cert. denied, 133 S. Ct. 207 (2012).

DIAZ, Circuit Judge, concurring:

This case raises a vexing question regarding the application of the crime of violence enhancement found in the Guidelines: To what extent does Begay's[1] "similar in kind" test for analyzing offenses under the residual clause survive Sykes v. United States, 131 S. Ct. 2267 (2011)?[2] Specifically, would the Supreme Court apply that test in determining whether Martin's fourth degree burglary conviction under Maryland law qualifies as a crime of violence? Or would the Court again change course?[3]

Were I writing on a cleaner slate, I would stop after applying the "degree of risk" test the Chief Judge posits in Part III.A of his opinion and find that Martin's fourth degree burglary conviction is for a crime of violence under the residual clause. This is so because the offense poses a risk of

_____

[1] Begay v. United States, 553 U.S. 137 (2008).

[2] As the Chief Judge notes, "[w]e rely on precedents addressing whether an offense is a crime of violence under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a violent felony under the Armed Career Criminal Act." See United States v. Carthorne, 726 F.3d 503, 511 n.6 (4th Cir. 2013), cert. denied, 134 S. Ct. 1326 (2014) (internal quotation marks omitted).

[3] The Supreme Court has granted certiorari in United States v. Johnson, 526 F. App'x 708 (8th Cir. 2013) (unpublished), on the issue of whether possession of a short-barreled shotgun is a violent felony under the Armed Career Criminal Act. Perhaps this case will give the Court an opportunity to clarify Begay's continued vitality after Sykes.

21

physical injury comparable to the risk posed by generic burglary. See James v. United States, 550 U.S. 192, 203 (2007).

But, as the Chief Judge explains, it appears we must also apply Begay's teaching here, which requires that we consider whether the offense conduct is "similar in kind" to the residual clause's enumerated offenses--i.e., whether the offense is "purposeful, violent, and aggressive." See 553 U.S. at 143-45. Because negligent conduct is all that is needed in Maryland to convict someone for breaking and entering the dwelling of another, the crime does not always involve the purposeful, violent, and aggressive conduct that is typical of the Guidelines' enumerated crimes. Thus, I am compelled to agree with the Chief Judge that Martin's sentence was improperly enhanced.

"[T]o put it mildly," the residual clause is "not a model of clarity." See James, 550 U.S. at 217 (Scalia, J., dissenting). The clause "is nearly impossible to apply consistently," and the Supreme Court's jurisprudence "has created numerous splits among the lower federal courts." See Chambers v. United States, 555 U.S. 122, 133 (2009) (Alito, J., concurring in the judgment); cf. United States v. Vann, 660 F.3d 771, 797 (4th Cir. 2011) (en banc) (Davis, J., concurring) ("At the end of the day, it may well be that Justice Scalia is right:

22

that the residual clause of the Armed Career Criminal Act is unconstitutionally vague.")

The Supreme Court has struggled mightily to make sense of this sphinx-like provision, but the clause remains an elusive target. We are told that a prior conviction triggers the sentencing enhancement when "the risk posed by [the offense at issue] is comparable to that posed by its closest analog among the enumerated offenses." See James, 550 U.S. at 203 (majority opinion). But, at least in some cases, the offense must also be "roughly similar, in kind as well as in degree of risk posed, to the [enumerated] examples." See Begay, 553 U.S. at 143. To be roughly similar in kind, the crime must be "purposeful, violent, and aggressive." See id. at 145. Fear not though, because "[i]n many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk." See Sykes, 131 S. Ct. at 2275. As Justice Scalia noted in dissent in Sykes, however, why the inquiry will often be redundant, and when it will not be, "are not entirely clear."[4] See 131 S. Ct. at 2285.

To further complicate matters, the Court in Sykes emphasized that "Begay involved a crime [(driving under the

_____

[4] In her separate dissent, Justice Kagan (joined by Justice Ginsberg) suggested that "[the purposeful, violent, and aggressive test] will make a resurgence--that it will be declared non-redundant--the next time the Court considers a crime, whether intentional or not, that involves risk of injury but not aggression or violence."). See id. at 2289 n.1.

23

influence)] akin to strict liability, negligence, and recklessness crimes; and the purposeful, violent, and aggressive formulation was used in that case to explain the result." Id. at 2276 (majority opinion). That statement, however, leaves open a question implicated here--whether Begay applies to all strict liability, recklessness, and negligence offenses.

I am not absolutely confident that the Court would actually apply Begay in this instance, but neither can I discount the possibility. I therefore join the Chief Judge's opinion.[5]

Beyond this case, however, "[t]he Court's ever-evolving interpretation of the residual clause will keep defendants and judges guessing for years to come." Id. at 2287 (Scalia, J., dissenting). I urge Congress or the Court to shed light on this "black hole of confusion and uncertainty." See Vann, 660 F.3d at 787 (Agee, J., concurring).

---

[5] I do so notwithstanding Judge O'Grady's fine dissent, which does not lack for persuasive force. His analysis confirms the substantial challenge that judges face in deciding when a prior conviction is for a crime of violence.

O'GRADY, District Judge, dissenting:

In this case we are called to decide whether Appellant Romelus Martin properly received a sentence enhancement under U.S.S.G. § 2K2.1(a)(2) for having two prior convictions for crimes of violence as defined by U.S.S.G. § 4B1.2. Specifically, Martin argues that the district court's categorization of his 2009 Maryland conviction for fourth degree burglary as a "crime of violence" was improper because it does not proscribe "purposeful, violent, and aggressive" conduct that is similar in kind to the offenses enumerated in § 4B1.2(a)(2). As Judge Diaz noted, the federal courts of appeals have struggled to consistently apply the residual clause in the wake of Begay and Sykes. The extent to which Begay's "similar in kind" requirement survived Sykes remains highly uncertain, and I join in Judge Diaz's call for clarity from Congress or the Court.[1] However, because I find that our precedents and those of the Supreme Court compel the conclusion that breaking and entering a dwelling is a "crime of violence" under § 4B1.2, I respectfully dissent and would affirm the sentence imposed by the district court.

_____

[1] The Supreme Court will have an opportunity to address the status of Begay next term in United States v. Johnson, 526 F. App'x 708 (8th Cir. 2013), in which certiorari was recently granted on the issue of whether possession of a short-barreled shotgun is a violent felony under the ACCA.

25

I.

I am in agreement, as is Judge Diaz, with Section III(A) of the majority opinion, in which the Chief Judge deftly analyzes this case under the "degree of risk" test utilized by the Supreme Court in James and Sykes. In 2009, Martin was convicted in Maryland of "break[ing] and enter[ing] the dwelling of another" in violation of Maryland Code Ann., Crim. Law § 6-205(a). Because this crime creates "the possibility of a face-to-face confrontation between the burglar and a third party," James v. United States, 550 U.S. 192, 203 (2007), it poses a risk of physical injury comparable to the risk arising from a generic, Taylor burglary, even in the absence of a specific intent element. Therefore, under the familiar "degree of risk" analysis, each of us agrees that Maryland fourth degree burglary of a dwelling constitutes a crime of violence under the Guidelines.

In Begay v. United States, 553 U.S. 137 (2008), the Supreme Court added a layer to the "degree of risk" test as it considered whether a prior conviction for driving under the influence was a crime of violence under the § 4B1.2's residual clause. Although the Court found that DUI presents a serious potential risk of physical injury (and therefore might have satisfied the James "degree of risk" test), it nonetheless held that DUI did not qualify as a crime of violence. The Court

26

reasoned that unlike the crimes enumerated in § 4B1.2(a)(2), which all "typically involve purposeful, violent, and aggressive conduct," driving under the influence is a strict liability crime. Because DUI does not require "any criminal intent at all," 553 U.S. at 145, the Court found that it was not sufficiently "similar in kind" to the enumerated offenses to constitute a crime of violence under the Guidelines. Id. at 143 (punctuation omitted).

Three years later in Sykes v. United States, 131 S. Ct. 2267 (2011), the Court revisited the residual clause, holding that a conviction for knowingly or intentionally "flee[ing] from a law enforcement officer" in a vehicle was categorically a crime of violence under 18 U.S.C. § 924(e).[2] In Sykes, the Court retreated from Begay's "similar in kind" requirement and found that a "degree of risk" analysis alone was sufficient to resolve the case. Writing for the majority, Justice Kennedy stressed that Begay was "[t]he sole decision of this Court concerning the reach of ACCA's residual clause in which risk was not the dispositive factor," and observed that the phrase "purposeful, violent, and aggressive" had "no precise textual link to the

_____

[2] As the Chief Judge notes, the definition of "crime of violence" in this circuit is informed interchangeably by cases decided under the Guidelines (U.S.S.G. § 4B1.2(a)(2)) and under nearly identical language in the Armed Career Criminal Act (18 U.S.C. § 924(e)). See United States v. Mobley, 687 F.3d 625, 628 n.3 (4th Cir. 2012), cert. denied, 133 S. Ct. 888 (2013).

27

residual clause." 131 S. Ct. at 2275. The majority explained that in contrast to Begay, in which the Court dealt with DUI ("a crime akin to strict liability, negligence, and recklessness crimes" that does not require any criminal intent), the Indiana statute at issue in Sykes had "a stringent *mens rea* requirement" of knowledge or intent. Id. at 2275–76. The Court thus found that because the vehicular flight statute proscribed inherently risky conduct and required a criminal mens rea, the "purposeful, violent, and aggressive" test that was used to explain the result in Begay had no bearing on the case. Id. ("As between the two inquiries, risk levels provide a categorical and manageable standard that suffices to resolve the case before us.").

In the aftermath of Sykes, the courts of appeals have varied in their treatment of Begay's "similar in kind" test. Some courts have suggested that Begay may not have survived Sykes at all. See, e.g., United States v. Sandoval, 696 F.3d 1011, 1016–17 n. 8 (10th Cir. 2012) ("[I]t is hard to say whether the Begay test survived Sykes . . . ."). See also United States v. Honeycutt, 2011 WL 2471024, at *4 (S.D. W. Va. 2011) ("Even as to such 'strict liability, negligence, and recklessness crimes,' however, it is far from clear that the Supreme Court is still committed to the Begay test."). Most courts, as observed by the Chief Judge, have continued to apply Begay's "similar in kind" test only to strict liability,

28

negligence, and recklessness crimes. See United States v. Chitwood, 676 F.3d 971, 979 (11th Cir. 2012) (collecting cases). Because I find that the Fourth Circuit has taken that path and that burglary of a dwelling under § 6-205(a) is not a strict liability, negligence, or recklessness crime, I must depart from the conclusion reached by the majority.[3]

## II.

Although this circuit has continued to make reference to Begay's "similar in kind" test in residual clause cases after Sykes, we have not uniformly (or even consistently) treated it as a counterpart to the "degree of risk" test. In our most recent residual clause case, this Court held that "[t]he appropriate 'analysis should focus on the level of risk associated with the previous offense of conviction, *notwithstanding* the purposeful, violent, and aggressive conduct stressed by the Begay Court in the context of a strict liability offense.'" United States v. Hemingway, 734 F.3d 323, 338 (4th Cir. 2013) (emphasis added) (quoting United States v. Vann, 660 F.3d 771, 780 (4th Cir. 2011) (King, J., concurring)). The Court

---

[3] However, even if Begay survived Sykes in its entirety and continues to apply in *all* residual clause cases in this circuit, I would still find that under Supreme Court and Fourth Circuit precedent, Maryland fourth degree burglary of a dwelling is "purposeful, violent, and aggressive" and therefore a "crime of violence" under Begay's "similar in kind" analysis. See infra Part III.

29

went on to explain that "[i]n short, Sykes makes clear that Begay did not substitute the 'purposeful, violent, and aggressive' inquiry for the analysis of risk that is already identified in the residual clause." Id. In another 2013 case, United States v. Carthorne, 726 F.3d 503, 513–15 (4th Cir.), we also remained singularly focused on the "degree of risk" analysis, only once citing to Begay in a footnote.[4] See also United States v. Davis, 689 F.3d 349, 357–58 (4th Cir. 2012) (reciting Begay's "purposeful, violent, and aggressive" language, but analyzing the statute based on the "dispositive question": "whether such conduct presents a serious potential risk of physical injury to another").

In other post-Sykes residual clause cases, this Court has sidestepped the "similar in kind" test altogether. For example, in United States v. Hudson, our analysis revolved only around the "degree of risk" approach without any consideration of the "similar in kind" or "purposeful, violent, and aggressive" tests. 673 F.3d 263, 266–69 (4th Cir. 2012). See also United

---

[4] After resolving the case exclusively under the "degree of risk" analysis, the Court referred briefly to the "purposeful, violent, and aggressive" test only to observe that it would have reached the same conclusion under that standard. 726 F.3d at 515 n.12. The only case the Carthorne Court cited for the application of the Begay test in our circuit was United States v. Thornton, a pre-Sykes case in which we applied Begay's reasoning to the strict liability offense of statutory rape. 554 F.3d 443, 448 (4th Cir. 2009).

States v. Tillery, 702 F.3d 170, 176–77 (4th Cir. 2012) (holding that the inherent risk of physical injury that results from eluding police in a motor vehicle renders it a crime of violence, without any mention of Begay). There appears to be only one reported post-Sykes case in which this circuit employed both the "degree of risk" and "similar in kind" analyses, and that case supports the conclusion that crimes requiring knowledge (as § 6-205(a) does) are "purposeful" under Begay. See United States v. Mobley, 687 F.3d 625, 631 (4th Cir. 2012).

Ultimately, as Judge Wilkinson stated in United States v. Vann: "Sykes clarifies that the risk of physical harm need not necessarily arise from 'purposeful, violent, and aggressive' conduct to qualify as an ACCA predicate." 660 F.3d 771, 804 (4th Cir. 2011) (en banc) (Wilkinson, J., concurring). The mention of the Begay test in some of our post-Sykes decisions need not be taken as an indication that we have continued to apply the "similar in kind" requirement to all residual clause cases. Rather, while we recognize the continued relevance of Begay in some cases, we have not required that crimes of violence be "purposeful, violent, and aggressive" outside the context of strict liability, negligence, and recklessness offenses.[5] Because

---

[5] As we have focused almost exclusively on the "degree of risk" test in post-Sykes cases, it is unclear whether Begay's "similar in kind" requirement truly survives Sykes at all in (Continued)

31

Martin's Maryland conviction for fourth degree burglary requires a mens rea of knowledge, the Begay test does not apply and the degree of risk analysis, as it was in Sykes, is sufficient to resolve this case. However, even if Begay did apply to this statute, our precedents compel the conclusion that breaking and entering a dwelling *is* typically "purposeful, violent, and aggressive," and therefore is similar in kind to the offenses enumerated in § 4B1.2(a)(2).

## III.

Although there is no specific intent requirement in § 6-205(a), Maryland fourth degree burglary is a *malum in se* crime that does require general criminal intent. Green v. State, 705 A.2d 133, 138 (Md. Ct. Spec. App. 1998). Specifically, Maryland courts have made clear that commission of fourth degree burglary under § 6-205(a) requires *knowing* unprivileged entry into the dwelling of another. One is therefore not culpable under the statute without "an awareness that [the entry] was unwarranted - lacking authority, license, privilege, invitation, or legality." Warfield v. State, 554 A.2d 1238, 1251 (Md. 1989). It is not enough that a defendant intentionally breaks into another's

___

this circuit. However, for purposes of this case I assume that in analyzing a strict liability, negligence, or recklessness offense, this circuit would require that the statute "typically involve purposeful, violent, and aggressive conduct" as set forth in Begay.

32

dwelling; he must also be "aware of the fact that he is making an *unwarranted* intrusion." Id. at 1250. The Warfield court's approving citation to the Model Penal Code confirms that the mens rea required for commission of § 6-205(a) is "knowledge." Id. (clarifying that the knowledge requirement is designed "to *exclude* from criminal liability both the inadvertent trespasser and the trespasser who believes that he has received an express or implied permission to enter") (quoting 2 Model Penal Code & Commentaries § 221.2, Comment 2(a), at 88 (1980)) (emphasis added).

In Herd v. State, the Maryland Court of Special Appeals drove home the statute's knowledge requirement. 724 A.2d 693 (Md. Ct. Spec. App. 1999). After considering Warfield and Green, the court emphasized that although fourth degree burglary is a general intent crime, "the mens rea must, indeed, be criminal." Id. at 700. Without a knowledge requirement, the statute would "ensnare with undiscriminating tentacles all sorts of actors whom the Legislature never intended to treat as criminal." Id. at 701. It is therefore clear that § 6-205(a) does not criminalize accidental or negligent acts, and is readily distinguishable from statutes that our circuit has described as

33

"explicitly criminalizing a broad swath of unintentional conduct."[6]

Because breaking and entering under § 6-205(a) must be *knowing*, the Maryland courts have recognized that "a reasonable belief that the trespass is authorized, licensed, or privileged is a complete defense to the crime." Herd, 724 A.2d at 701. See also Green, 705 A.2d at 139. Although the Chief Judge rightly notes that a reasonable mistake is a defense to § 6-205(a), it does not necessarily follow that the presence of such a defense (and conversely, the *absence* of a defense when a mistake is unreasonable) renders § 6-205(a) a mere negligence crime.

In the criminal law, it is generally the case that an honest and reasonable mistake of fact is a defense to a general intent crime when it negates the mens rea required for the offense. Warfield, 554 A.2d at 1252; 21 Am. Jur. 2d Criminal Law § 153. On the other hand, an honest but *unreasonable* mistake is often not a defense, or is only a defense to a specific intent crime. Id.[7] But a refusal to recognize unreasonable mistakes as

---

[6] United States v. Rivers, 595 F.3d 558, 565 (4th Cir. 2010) (holding that South Carolina's blue light statute was not a crime of violence under Begay).

[7] It should be noted that there is significant debate over whether "unreasonable" mistakes should be further classified as either "negligent" or "reckless" in order to determine whether they provide a defense to a given crime. See generally 1 Crim. L. Def. § 62 (2013). Because mistakes under § 6-205(a) (and (Continued)

exculpatory does not effectively reduce the mens rea of any general intent crime to "negligence." Indeed, the Green court saw no conflict between careful adherence to "the knowledge requirement" and excusal only of "the inadvertent trespasser and the trespasser who entertains a *reasonable* belief that his conduct was proper." 705 A.2d at 139 (emphasis added). As with other statutes requiring knowledge, the mens rea persists despite the fact that a mistake with respect to the circumstances surrounding the crime may not be exculpatory unless it was made reasonably.

Residual clause cases from the Supreme Court and from this circuit confirm that the existence of only a *reasonable* mistake defense does not compel the conclusion that crimes requiring "knowledge" should be treated as negligence crimes. Perhaps the best example is Sykes itself. The Indiana vehicular flight statute the Court considered in Sykes, Ind. Code § 35-44-3-3[8], provided that a person may not "knowingly or intentionally" flee from a law enforcement officer in a vehicle after the officer has identified himself and ordered the person to stop. As the

under the other statutes discussed infra) are only referred to as "reasonable" or not, this discussion (though it raises an interesting issue) does not affect the outcome in the present case.

[8] Since repealed and replaced by the substantively identical § 35-44.1-3-1.

35

crime, on its face, could be committed either knowingly *or* intentionally, the Court specifically noted that Indiana courts have interpreted § 35-44-3-3 to require a mens rea of knowledge. 131 S. Ct. 2267, 2271 (2011) (citing Woodward v. State, 770 N.E.2d 897, 900-01 (Ind. Ct. App. 2002)).

Importantly, Indiana had codified in its criminal law a general defense based on mistake—specifically, "[i]t is a defense that the person who engaged in the prohibited conduct was *reasonably* mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." Ind. Code. § 35-41-3-7. It is therefore clear that while violation of the statute at issue in Sykes required knowledge, an honest but *unreasonable* mistake of fact would not have been exculpatory. The Supreme Court nonetheless found that because the statute had "a stringent *mens rea* requirement," its violation was predicated on purposeful conduct and the degree of risk analysis was sufficient. 131 S. Ct. at 2275.

The Fourth Circuit reached the same result in one of our most recent residual clause cases. In United States v. Tillery, this Court held that eluding police in a vehicle was a crime of violence under the Guidelines. 702 F.3d 170. Under the Virginia statute at issue, it is a violation of the law for a person, having received a visible or audible signal to stop from a law enforcement officer, to drive in willful and wanton disregard of

36

such signal or to attempt to elude law enforcement by any other means. Va. Code Ann. § 46.2-817(A). The statute specifically provides that it is "an affirmative defense . . . if the defendant shows he *reasonably* believed he was being pursued by a person other than a law-enforcement officer." Id. (emphasis added). Despite the absence of a defense for unreasonable mistakes, this Court used the degree of risk analysis and held that eluding police was a crime of violence. 702 F.3d at 176–77.

Although any of the above crimes (vehicular flight, eluding police, and breaking and entering under § 6-205(a)) could technically be committed despite a negligent mistake, our precedents demonstrate that the existence of a defense only for *reasonable* mistakes does not undermine the mens rea required to commit the underlying crimes. It follows that because Maryland's fourth degree burglary is a knowledge crime, the Begay test is unnecessary and the degree of risk analysis is dispositive. However, even if Begay's "similar in kind" analysis were applied in this case, § 6-205(a) is a crime of violence because it *typically* requires a knowing, affirmative criminal act.

Despite Begay's use of the word "purposeful," the "similar in kind" analysis does not require that all crimes of violence

have a mens rea of "intent" or "purpose."[9] As noted above, in this Court's only true application of Begay since Sykes, we specifically found that possession of a shank in prison was a crime of violence because it required "proof that the inmate *knowingly* possessed the prohibited object," and therefore involved "'purposeful' conduct." United States v. Mobley, 687 F.3d 625, 631 (4th Cir. 2012). Thus, even under Begay, we have held that crimes requiring a mens rea of "knowledge" are "purposeful" (and for the reasons above, the existence of a reasonable mistake of fact defense does not alter this result).

Finally, it must be remembered that in determining whether a statute is a "crime of violence" under either James, Begay, or Sykes, we are required to look to the manner in which the crime is *typically* committed. In James, the Supreme Court stressed that while one could "imagine a situation in which attempted burglary might not pose a realistic risk," the ACCA is based on "probabilistic concepts" and "does not require metaphysical certainty." 550 U.S. 192, 207–08 (2007). See also United States

---

[9] The Court's general use of the word "purposeful" in Begay necessarily created confusion with "purposeful" as used as a level of culpability in the Model Penal Code. On its own terms and as interpreted by this circuit, Begay does not require that all crimes of violence have a mens rea of "intent." Rather, "purposeful" as used in Begay distinguished crimes whose risk of harm stems from active, criminal conduct from those in which negligent, accidental, or even faultless conduct typically creates the risk of harm.

38

v. Carthorne, 726 F.3d 503, 507 (4th Cir. 2013) (examining the risk of injury "in the usual case"); United States v. Foster, 674 F.3d 391, 394–95 (4th Cir. 2012) (Wilkinson, J., concurring in the denial of rehearing en banc) (explaining that to "hypothesize unusual cases" is "at odds with the simple common sense on which the Supreme Court has relied in ACCA cases"). Most importantly, Begay itself only requires that a crime of violence "*typically* involve purposeful, 'violent,' and 'aggressive' conduct"; there has never been a need to demonstrate that those factors are present in every *conceivable* case.[10] The majority correctly notes that in a technical sense, because an unreasonable mistake of fact is not a defense, violation of § 6-205(a) "does not always" involve purposeful conduct and "may be based on" negligent or reckless conduct. But I submit that while breaking and entering a dwelling might, in some rare cases, be committed with a lower level of culpability, the manner in which it is *typically* committed renders it a "crime of violence" under the Guidelines.

---

[10] If there is any doubt that a conviction under § 6-205(a) rarely results from negligent conduct, the language of the Maryland courts is instructive. In Herd v. State, the Maryland Court of Special Appeals referred to the mistake defense in fourth degree burglary cases as "relatively rare and essentially esoteric." 724 A.2d 693, 704 (Md. Ct. Spec. App. 1999). In explaining the burden of proof, the court went on to describe such defenses as "arcane" and "aris[ing] only on rare occasions." Id. at 703.

IV.

As Judge Diaz observed, the proper reach of § 4B1.2's residual clause (and the residual clause of the ACCA) is not a model of clarity. In light of the divergent conclusions being reached by the courts of appeals (and the frequency with which the residual clause is applied), it is evident that further guidance from Congress or the Court is necessary. My fellow panelists and I are in agreement that because Maryland fourth degree burglary requires knowingly breaking and entering the dwelling of another, it creates a high risk of confrontation and therefore poses the same level of risk as generic burglary. In my view, we need not look further. But even under Begay's "similar in kind" test, I believe our precedents compel the result that Maryland fourth degree burglary is a "crime of violence." Therefore, I respectfully dissent and would affirm the sentence imposed by the district court.