Vacated and remanded by published opinion. Chief Judge TRAXLER wrote the majority opinion, in which Judge DIAZ *487 joined. Judge DIAZ wrote a separate concurring opinion. Judge O’GRADY wrote a dissenting opinion.
TRAXLER, Chief Judge:
Romelus Pentroy Martin appeals the 77-month sentence imposed after he pleaded guilty to unlawful possession of a firearm by a convicted felon. See 18 U.S.C. § 922(g)(1). We agree with Martin that the district court erred by increasing his sentence after determining that Martin’s prior conviction for fourth-degree burglary constituted a crime of violence under U.S.S.G. § 2K2.1(a)(2), and we therefore vacate Martin’s sentence and remand for resentencing.
I.
The Sentencing Guideline applicable to § 922(g) violations sets a base offense level of 24 for defendants who commit the offense after “sustaining at least two felony convictions of ... a crime of violence,” U.S.S.G. § 2K2.1(a)(2), and a base offense level of 20 for defendants with only one prior conviction for a crime of violence, see id. § 2K2.1(a)(4)(A).
When Martin pleaded guilty to the felon-in-possession charge in August 2012, he had three prior convictions, including a 2007 Maryland conviction for conspiracy to commit robbery and a 2009 Maryland conviction for fourth-degree burglary. The district court held that both the 2007 conviction and the 2009 conviction amounted to crimes of violence as defined by the Guidelines, and the court therefore assigned Martin a base-offense level of 24. After adjusting the offense level to reflect Martin’s acceptance of responsibility, the district court determined that Martin’s advisory sentencing range was 77-96 months, and the court sentenced Martin to 77 months’ imprisonment.
On appeal, Martin concedes that his 2007 conviction was properly treated as a crime of violence, but he contends that the district court erred by treating the 2009 conviction as a crime of violence. If the district court had not treated the 2009 conviction as a crime of violence, Martin’s base-offense level would have been 20 instead of 24, and his advisory sentencing range would have been 51-63 months.
II.
For purposes of U.S.S.G. § 2K2.1, a “crime of violence” is defined as
any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
U.S.S.G. § 4B1.2(a); see id § 2K2.1, cmt. 1 (defining “crime of violence” through cross-reference to § 4B1.2(a)). When determining whether a prior conviction qualifies as a crime of violence under the Guidelines, we apply a categorical approach, focusing on “the fact of conviction and the statutory definition of the prior offense” rather than the conduct underlying the offense. Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); see United States v. Carthorne, 726 F.3d 503, 511 (4th Cir. 2013), cert. denied, — U.S. -, 134 S.Ct. 1326, 188 L.Ed.2d 337 (2014).[1]
*488 Maryland’s fourth-degree burglary statute encompasses four separate crimes: breaking and entering the dwelling of another, see Md.Code Ann., Crim. Law § 6-205(a); breaking and entering the storehouse of another, see id. § 6-205(b); being in a dwelling or storehouse of another (or the yard or other area belonging to such dwelling or storehouse) with the intent to commit theft, see id. § 6-205(c); and possessing burglar’s tools with intent to use, see id. § 6-205(d). Although there was some disagreement below, the parties now agree that the relevant charging documents establish that Martin was convicted of violating subsection (a), which provides that “[a] person may not break and enter the dwelling of another.” Id. § 6-205(a).
Because fourth-degree burglary does not have “as an element the use, attempted use, or threatened use of physical force against the person of another,” it is not a crime of violence under U.S.S.G. § 4B1.2(a)(l).
And as the government concedes, the crime likewise does not constitute the enumerated crime of “burglary of a dwelling.” U.S.S.G. § 4B1.2(a)(2). Under the categorical approach, “a prior conviction constitutes a conviction for [an] enumerated offense if the elements of the prior offense correspond in substance to the elements of [an] enumerated offense.” United States v. Cabrera-Umanzor, 728 F.3d 347, 350 (4th Cir.2013) (internal quotation marks and alteration omitted). “[W]here Congress has not indicated how a prior offense enumerated in a sentencing enhancement statute is to be interpreted, it should be understood to refer to ‘the generic, contemporary meaning’ of the crime.” United States v. Rangel-Castane-da, 709 F.3d 373, 376 (4th Cir.2013) (quoting Taylor, 495 U.S. at 598, 110 S.Ct. 2143).
In Taylor, the Supreme Court defined generic “burglary” under the ACCA as “an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.” Taylor, 495 U.S. at 598, 110 S.Ct. 2143. Generic “burglary of a dwelling” under the Guidelines follows the Taylor definition, “with the additional requirement that a burglary qualifying as a ‘crime of violence’ must involve a dwelling.” United States v. Bonilla, 687 F.3d 188, 190 n. 3 (4th Cir.2012), cert. denied, — U.S. -, 134 S.Ct. 52, 187 L.Ed.2d 47 (2013). Because § 6-205(a) does not require that the defendant have the intent to commit a crime when he enters the dwelling, fourth-degree burglary is not generic burglary of a dwelling under § 4B1.2(2). Accordingly, Martin’s 2009 conviction is a crime of violence only if it satisfies the requirements of the “residual clause” of § 4B1.2(a)(2) — if the offense “otherwise involves conduct that presents a serious potential risk of physical injury to another.” U.S.S.G. § 4B1.2(a)(2). We turn to that inquiry now.
III.
When determining whether a prior conviction falls within the residual clause, our inquiry remains a categorical one, “consider[ing] whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.” James v. United States, 550 U.S. 192, 202, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007). The parties dis *489 agree, however, about the precise scope of the residual-clause inquiry.
In James, the Supreme Court explained that the enumerated offenses preceding the residual clause “provide a baseline against which to measure the degree of risk that a nonenumerated offense must ‘otherwise’ present in order to qualify” as a crime of violence. Id. at 208, 127 S.Ct. 1586 (emphasis added). The Court held that attempted burglary is a violent felony under the ACCA’s residual clause because the risk posed by an attempted burglary crime presents a risk of physical injury “comparable to that posed by its closest analog among the enumerated offenses— here, completed burglary.” Id. at 203, 127 S.Ct. 1586.
In Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), a case involving a prior conviction for driving under the influence, the Court added an additional layer to the degree-of-risk analysis. The Court held that, in addition to establishing the baseline degree of risk, the enumerated offenses also “illustrate the kinds of crimes that fall within the statute’s scope. Their presence indicates that the statute covers only similar crimes, rather than every crime that presents a serious potential risk of physical injury to another.” Id. at 142, 128 S.Ct. 1581 (first emphasis added; internal quotation marks omitted). The Begay Court thus held that the enumerated offenses must be understood “as limiting the crimes that [the residual clause] covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves.” Id. at 143, 128 S.Ct. 1581 (emphasis added). The Court concluded that the ACCA’s enumerated crimes “all typically involve purposeful, violent, and aggressive conduct,” id. at 144-45, 128 S.Ct. 1581 (internal quotation marks omitted), and the Court distinguished those crimes from offenses that — like DUI — “impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all,” id. at 145, 128 S.Ct. 1581. Concluding that DUI is not purposeful, violent, or aggressive, the Court held that it was not similar in kind to the enumerated offenses and thus was not a crime of violence. See id. at 145-46, 128 S.Ct. 1581.
In Sykes v. United States, — U.S. -, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011), however, the Court returned to the comparable-degree-of-risk approach, explaining that “[i]n general, levels of risk divide crimes that qualify [under the residual clause] from those that do not.” Id. at 2275 (emphasis added). As to the Begay test, the Court stated that
[t]he phrase “purposeful, violent, and aggressive” has no precise textual link to the residual clause, which requires that an ACCA predicate “otherwise involve conduct that presents a serious potential risk of physical injury to another.” § 924(e)(2)(B)(ii). The Begay phrase is an addition to the statutory text. In many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of physical injury to others tend to be one and the same. As between the two inquiries, risk levels provide a categorical and manageable standard that suffices to resolve the case before us.
Begay involved a crime akin to strict liability, negligence, and recklessness crimes; and the purposeful, violent, and aggressive formulation was used in that case to explain the result. The felony at issue here is not a strict liability, negligence, or recklessness crime and because it is, for the reasons stated and as *490 a categorical matter, similar in risk to the listed crimes, it is a crime that “otherwise involves conduct that presents a serious potential risk of physical injury to another.”
Id. at 2275-76.
Martin argues that Begay governs our analysis of the residual clause question, such that the offense-level enhancement may be sustained only if fourth-degree burglary is (1) similar in kind to the enumerated offenses — ie., purposeful, violent, and aggressive; and (2) the degree of risk it poses is roughly similar to the degree of risk posed by burglary, the closest enumerated-crime analog. The government, however, argues that an inquiry into the degree of risk is all that is required after Sykes. In the government’s view, Sykes limited application of Begay’s similar-in-kind standard to crimes akin to strict liability, negligence, and recklessness crimes. Because the crime at issue in this case requires the defendant to know that his entry was unauthorized, see Dabney v. State, 159 Md.App. 225, 858 A.2d 1084, 1090-91 n. 2 (2004), it is not a strict-liability crime, and the government therefore contends that Begay is inapplicable.
Most of the circuits addressing the issue have held that Sykes limited Begay’s similar-in-kind inquiry to crimes predicated on strict liability, negligence, or recklessness. See, e.g., United States v. Chitwood, 676 F.3d 971, 979 (11th Cir.) (“Sykes makes clear that Begay’s ‘purposeful, violent, and aggressive’ analysis does not apply to offenses that are not strict liability, negligence, or recklessness crimes.... ”), cert. denied, — U.S.-, 133 S.Ct. 288, 184 L.Ed.2d 169 (2012); accord United States v. Spencer, 724 F.3d 1133, 1139 (9th Cir.2013); Brown v. Caraway, 719 F.3d 583, 593 (7th Cir.2013); United States v. Bartel, 698 F.3d 658, 662 (8th Cir.2012), cert. denied, — U.S.-, 133 S.Ct. 1481, 185 L.Ed.2d 381 (2013); Harrington v. United States, 689 F.3d 124, 135-36 (2d Cir.2012); United States v. Rodriguez, 659 F.3d 117, 119 (1st Cir.2011); United States v. Smith, 652 F.3d 1244, 1247-48 (10th Cir.2011).
In this circuit, however, we have continued, even after Sykes, to apply Begay’s similar-in-kind requirement to residual-clause cases. See Carthorne, 726 F.3d at 515 n. 12 (“The Supreme Court has also held that, for an offense to fall within the residual clause, it must be ‘roughly similar, in kind as well as in degree of risk posed,’ to arson, burglary, extortion, and crimes involving explosives.’ ” (quoting Begay, 553 U.S. at 143, 128 S.Ct. 1581)); United States v. Davis, 689 F.3d 349, 357-58 (4th Cir.2012) (per curiam) (“[A] crime falls within the residual provision if it involves ‘purposeful, violent, and aggressive conduct,’ that ‘in the ordinary case, presents a serious potential risk of injury to another.’ ” (quoting Begay, 553 U.S. at 144-45, 128 S.Ct. 1581, and James, 550 U.S. at 208, 127 S.Ct. 1586)); see also United States v. Hemingway, 734 F.3d 323, 338 (4th Cir.2013) (declining to apply Begay standard where degree-of-risk inquiry established that prior conviction was not a crime of violence). But see United States v. Hudson, 673 F.3d 263, 265, 267-68 (4th Cir.) (mentioning Begay, but applying only the Sykes degree-of-risk standard when determining that prior conviction amounted to a crime of violence under the ACCA’s residual clause), cert. denied, — U.S.-, 133 S.Ct. 207, 184 L.Ed.2d 106 (2012). Accordingly, we will consider whether Martin’s prior conviction for fourth-degree burglary qualifies as a crime of violence under the residual clause of § 4B1.2 under both the degree-of-risk test and the similar-in-kind test, as required by Begay.
A. Degree of Risk
Under the degree-of-risk test, a prior conviction amounts to a crime of *491 violence under the residual clause if the risk of physical injury posed by that offense is “roughly similar,” Begay, 553 U.S. at 143, 128 S.Ct. 1581, or “comparable” to the risk of physical injury “posed by its closest analog among the enumerated offenses,” James, 550 U.S. at 203, 127 S.Ct. 1586. “A roughly similar degree of risk means that the prior crime, like the enumerated offenses, creates an immediate, serious, and foreseeable physical risk that arises concurrently with the commission of the crime itself.” United States v. White, 571 F.3d 365, 370 (4th Cir.2009) (internal quotation marks and alterations omitted).
As it was in James, -the enumerated offense of burglary is the closest analog to the fourth-degree burglary conviction at issue in this case. Accordingly, the question is whether the risk of physical injury posed by the fourth-degree burglary offense is roughly similar to the risk posed by generic burglary.
The Supreme Court has explained that the risk of physical injury associated with generic burglary comes “from the possibility of a face-to-face confrontation between the burglar and a third party — whether an occupant, a police officer, or a bystander— who comes to investigate.” James, 550 U.S. at 203, 127 S.Ct. 1586. The government contends that the same possibility of confrontation is present during the commission of fourth-degree burglary and that the potential risk of physical injury associated with fourth-degree burglary is thus roughly the same as that associated with generic burglary.
Martin, however, contends that the risk of physical injury during a generic burglary comes from the burglar’s specific intent to commit a crime. See Taylor, 495 U.S. at 588, 110 S.Ct. 2143 (“The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.” (emphasis added)). Because fourth-degree burglary does not require an intent to commit a crime at the time of the unlawful entry, Martin argues that there is less risk of violent confrontation.
While Martin’s argument is not without force, we agree with the government the potential risk of physical injury arising from the commission of fourth-degree burglary under Md.Code Ann., Crim. Law § 6-205(a) is comparable to that arising from the commission of generic burglary. Critical to this conclusion is the fact that § 6-205(a) requires entry into a dwelling. As this court observed when considering whether the substantively identical statutory predecessor to § 6-205(a) was a crime of violence, dwellings — unlike “ ‘storehouses’ ” — are “likely to be occupied.” United States v. Custis, 988 F.2d 1355, 1363 (4th Cir.1993), cent granted on other grounds, 510 U.S. 913, 114 S.Ct. 299, 126 L.Ed.2d 248 (1993), and aff'd, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). And because dwellings are likely to be occupied, we concluded in Custis — even though the statute lacked the intent-to-commit-a-erime element — that the crime of breaking and entering the dwelling house of another creates “a substantial risk of confrontation.” Id. at 1363.[2] This risk of confron *492 tation is precisely the same risk that makes generic burglary a dangerous crime. See Sykes, 131 S.Ct. at 2273 (“Burglary is dangerous because it can end in confrontation leading to violence.”); James, 550 U.S. at 211, 127 S.Ct. 1586 (“The risk of physical injury in [generic burglary] occurs when there is a confrontation between the criminal and another person, whether an occupant of the structure, a law enforcement officer or security guard, or someone else.”).
Martin argues, however, that an offender who enters a dwelling without a contemporaneous intent to commit a crime would be less likely to respond violently to the discovery of his presence. Even if we accept that argument as true, it typically will not be apparent to the discovering homeowner whether an intruder harbors an additional intent to commit an additional crime, and the homeowner’s response to discovering an intruder will likely be the same whether or not the intruder harbors the additional intent. See James, 550 U.S. at 211, 127 S.Ct. 1586 (noting that homeowner angered by an attempted burglary “may give chase, and a violent encounter may ensue”). When faced with an angry homeowner taking protective measures, or a police officer responding to a call about suspicious activity, intruders — even those without the specific intent to commit a crime — may well resort to violence in an effort to avoid apprehension. As the Sixth Circuit has explained, the risk of physical injury inherent in such confrontations “lies not only in the intruder’s intent, but in their volatility. People do unpredictable things when they unexpectedly encounter burglars in their homes. The burglars often reciprocate. The result is confrontations that present a serious risk of physical injury regardless of the burglar’s initial intent” United States v. Skipper, 552 F.3d 489, 493 (6th Cir.2009) (emphasis added; citation omitted).
Under these circumstances, and given this country’s strong tradition of respecting the sanctity of the home and the homeowner’s right to exclude others therefrom, we simply cannot conclude that the absence of the intent to commit a crime makes the breaking-and-entering at issue here significantly less risky than generic burglary. Because the same risk of confrontation and resulting physical injury associated with generic burglary arises under the elements of the crime for which Martin was convicted, we believe that the risk of physical injury posed by Martin’s offense is comparable to the risk of physical injury posed by generic burglary. See United States v. Hampton, 585 F.3d 1033, 1043 (7th Cir.2009) (concluding that residential entry under Indiana law, which does not include a felonious-intent element, “is similar in risk to the enumerated offense of burglary because both create a substantial risk that if the offender is confronted by someone inside the home, violence will ensue”); Skipper, 552 F.3d at 493 (conviction under Ohio’s fourth-degree burglary statute, which does not require felonious intent at time of entry, is a violent felony under the residual clause of U.S.S.G. § 4B1.2(a)(2)).
B. Similar In Kind
Our conclusion that fourth-degree burglary of a dwelling and generic burglary have similar degrees of risk does not end our inquiry, as Begay requires that the prior conviction must also be similar in kind to the enumerated crimes. See Begay, 553 U.S. at 143, 128 S.Ct. 1581.
*493 Four crimes are enumerated in the text of § 4B1.2(a)(2) — burglary of a dwelling, arson, extortion, and crimes involving the use of explosives. The commentary to § 4B1.2(a) “adds six crimes to the list of example crimes for Guidelines cases — murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, and robbery.” United States v. Peterson, 629 F.3d 432, 439 (4th Cir.2011); see U.S.S.G. § 4B1.2(a) cmt. 1. Because this “enlarged array of example crimes” all involve conduct that is properly viewed as purposeful, violent, and aggressive, Peterson, 629 F.3d at 439, the Begay inquiry as applied to the Guidelines requires “that a qualifying predicate offense under § 4B 1.2(a) must also be purposeful, violent, and aggressive,” id.
To be purposeful, violent, and aggressive, a crime must have a mens rea of at least recklessness; crimes that can be committed through negligent conduct do not satisfy the Begay inquiry. See id. at 439-40 (applying Begay to conclude that involuntary manslaughter under North Carolina law is not a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2) because the crime can be committed through negligent conduct); United States v. Rivers, 595 F.3d 558, 565 (4th Cir.2010) (South Carolina blue-light statute not purposeful, aggressive, and violent under Begay because the statute “explicitly criminalizes a broad swath of unintentional conduct”). Relying on these principles, Martin argues that a violation of § 6-205(a) cannot be characterized as purposeful because the statute can be violated by negligent conduct. We agree.
As Maryland’s highest court has made clear, the statute at issue in this case requires proof of the defendant’s “general criminal intent to break and enter” the dwelling. Warfield v. State, 315 Md. 474, 554 A.2d 1238, 1250 (1989) (considering § 6-205(a)’s substantively identical statutory predecessor). Thus, “to be culpable” under the statute, the defendant must have entered the dwelling “with an awareness that it was unwarranted — lacking authority, license, privilege, invitation, or legality.” Id. at 1251.
The Warfield court explained that the statute’s knowledge requirement “is designed primarily to exclude from criminal liability both the inadvertent trespasser and the trespasser who believes that he has received an express or implied permission to enter or remain.” Id. at 1250 (quoting Model Penal Code § 221.2 (1985)). Accordingly, it is an affirmative defense to a § 6-205(a) charge “if the actor reasonably believed that the owner of the premises would have licensed him to enter.” Green v. State, 119 Md.App. 547, 705 A.2d 133, 139 (1998) (internal quotation marks and alterations omitted); see also Warfield, 554 A.2d at 1251 (“To make culpable the inadvertent trespasser and the trespasser who entertains a reasonable belief that his conduct was proper would be unreasonable, illogical, inconsistent with common sense, and contrary to the interests of justice.” (emphasis added)).
Because the defense requires a reasonable belief of permission to enter the dwelling, a defendant who im reasonably believed that he had permission to enter would be guilty under § 6-205(a). That is, a defendant who reasonably believed that he had permission to enter would not have the awareness that his entry was unwarranted, while a defendant who unreasonably believed he had permission would be deemed to be aware that his entry was unwarranted. It is therefore clear that a conviction under § 6-205(a) may be based on negligent rather than intentional conduct. See Bane v. State, 73 Md.App. 135, 533 A.2d 309, 317 (1987) (Because “breaking and entering involves no felonious or *494 larcenous intent, it is a crime of general intent that includes within its scope a variety of acts, including some that are reckless or negligent. A conviction for that offense may result either from a well-planned scheme-or merely rash, impetuous conduct of a defendant.” (citation omitted)). And because the statute may be violated by negligent conduct, a violation of § 6-205(a) is not purposeful and thus is not similar in kind to the Guidelines’ enumerated crimes. Martin’s 2009 conviction under § 6-205(a) therefore cannot be treated as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2). See Peterson, 629 F.3d at 439; Rivers, 595 F.3d at 565.
IV.
Although we conclude that Md.Code Ann., Crim. Law § 6-205(a) proscribes conduct that presents a degree of risk of physical injury that is roughly similar to the risk of injury posed by generic burglary, the statute can be violated by negligent conduct and therefore is not similar in kind to the offenses enumerated in § 4B1.2 of the Sentencing Guidelines. The district court therefore erred by treating Martin’s 2009 conviction for violating § 6-205(a) as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2).[3] Accordingly, we hereby vacate Martin’s sentence and remand for resentencing consistent with this opinion.

VACATED AND REMANDED.

. While the Taylor Court was interpreting “violent felony” under the Armed Career Criminal Act ("ACCA”), 18 U.S.C. § 924(e)(2)(B), we generally apply Taylor's categorical ap *488 proach when considering prior-conviction-based enhancements under the Guidelines. See, e.g., Carthorne, 726 F.3d at 511 n. 6.

. The Custis court held that a conviction for attempted breaking and entering of a dwelling under Md.Code Ann. art. 27, § 31A (repealed 1994) was a crime of violence under the ACCA’s residual clause. Because the Cus-tis court’s analysis of the residual-clause issue did not follow the approach now dictated by the Supreme Court’s later-decided opinions in James, Begay, and Sykes, Custis’ ultimate crime-of-violence determination is no longer binding. See, e.g., United States v. Prince-Oyibo, 320 F.3d 494, 498 (4th Cir.2003) (“Absent an en banc overruling or a superseding contrary decision of the Supreme Court, we, *492 as a circuit panel, are bound by [earlier circuit precedent].”). Those later-decided opinions, however, do not undermine the Custis court's analysis of the nature of, and the risks inherent in, the underlying crime.

. Martin also contends that the residual clause is unconstitutionally vague. That argument, however, has already been rejected by this court and by the Supreme Court. See Sykes v. United States, - U.S. -, 131 S.Ct. 2267, 2277, 180 L.Ed.2d 60 (2011) (Although the “general and qualitative” nature of the residual clause “may at times be ... difficult for courts to implement,” the residual clause "states an intelligible principle and provides guidance that allows a person to conform his or her conduct to the law.” (internal quotation marks omitted)); United States v. Hudson, 673 F.3d 263, 268-69 (4th Cir.) (“[T]he Supreme Court has consistently declined to find the residual clause void for vagueness.”), cert. denied,-U.S.-, 133 S.Ct. 207, 184 L.Ed.2d 106 (2012).