12-4054-cr
*United States v. Van Mead*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2013

(Argued: December 4, 2013          Decided: December 8, 2014)

No. 12-4054-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

- v. -

TERRY VAN MEAD,

*Defendant-Appellant.*

_____

Before:          LIVINGSTON and LOHIER, *Circuit Judges*; STEIN, *District Judge.*[*]

Defendant-Appellant Terry Van Mead ("Mead") pleaded guilty to one count of failing to register as a sex offender in violation of the Sex Offender Registration and Notification Act, 18 U.S.C. § 2250(a), and one count of possession of stolen firearms pursuant to 18 U.S.C. §§ 922(j), 924(a)(2).  At Mead's sentencing, the district court concluded that Mead had sustained two felony convictions for "crimes of violence" prior to committing the firearms offense – one for attempted burglary and one for statutory rape in violation of New York Penal Law § 130.40-2 – and,

---

[*] The Honorable Sidney H. Stein, United States District Judge for the Southern District of New York, sitting by designation.

accordingly, calculated Mead's base offense level pursuant to the United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1, which sets a base offense level of 24 for defendants who have committed certain firearms offenses after "sustaining at least two felony convictions of . . . a crime of violence," as that term is defined in U.S.S.G. § 4B1.2. Because we conclude that the conduct prohibited by New York Penal Law § 130.40-2 is not categorically a "crime of violence" under U.S.S.G. § 4B1.2, we VACATE the district court's judgment and REMAND for resentencing.

DAVID L. MCCOLGIN (Steven L. Barth, *on the brief*), Assistant Federal Public Defenders, *for* Michael L. Desautels, Federal Public Defender, District of Vermont, Burlington, VT, *for Defendant-Appellant*.

CHRISTINA E. NOLAN (Gregory L. Waples, *on the brief*), Assistant United States Attorneys, *for* Tristram J. Coffin, United States Attorney, District of Vermont, Burlington, VT, *for Appellee*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Defendant Terry Van Mead ("Mead") appeals from a judgment of the United States District Court for the District of Vermont (Sessions, *J.*), sentencing him to 130 months' imprisonment following his guilty plea to one count of failing to register as a sex offender in violation of the Sex Offender Registration and Notification Act, 18 U.S.C. § 2250(a), and one count of possession of stolen firearms pursuant to 18 U.S.C. §§ 922(j), 924(a)(2). On appeal, Mead argues that the district court erred in calculating his sentence under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). Specifically, Mead contends that the district court

incorrectly applied the enhancement in U.S.S.G. § 2K2.1, which sets a base offense level of 24 for defendants who have committed certain firearms offenses after "sustaining at least two felony convictions of . . . a crime of violence," as that term is defined in U.S.S.G. § 4B1.2. Mead asserts that, contrary to the district court's ruling, his conviction for statutory rape under New York Penal Law ("N.Y.P.L.") § 130.40-2 was not a "crime of violence." Because we conclude that the conduct prohibited by N.Y.P.L. § 130.40-2 is not categorically a "crime of violence" under § 4B1.2, we vacate the judgment and remand for resentencing.

## BACKGROUND

The facts on appeal are not in dispute. In 2006, Mead was convicted of violating N.Y.P.L. § 130.40-2, which provides that "[a] person is guilty of criminal sexual act in the third degree when . . . [b]eing twenty-one years old or more, he or she engages in oral sexual conduct or anal sexual conduct with a person less than seventeen years old." Mead, then thirty years old, had engaged in repeated sexual encounters with a fifteen-year-old girl. The conviction required Mead to register as a sex offender both prior to his release from prison and upon moving to another state, and to notify authorities if his address changed, conditions with which Mead

initially complied. However, in June 2010, Mead was arrested in Vermont for assaulting his former girlfriend and sentenced to another term of imprisonment. Upon his release from prison in August 2010, Mead continued to reside in Vermont without notifying New York authorities of his change of address or registering as a sex offender in Vermont.

Following multiple additional confrontations with authorities, Mead was again arrested in Vermont in October 2010 for the instant offense conduct. At the time of his arrest, Mead was driving a stolen car carrying numerous firearms, hunting gear, a gaming system, and games, all of which had been reported stolen from two Vermont homes earlier that day. One of those firearms was found fully loaded and "jammed between the front driver and passenger seats with the barrel down and handle up." In addition, officers found in Mead's wallet cash and a check made out to Mead that investigators traced to a local sporting goods store that had purchased ten firearms from Mead that day. Those firearms had also been reported stolen from the same two homes.

In August 2011, a federal grand jury indicted Mead for failing to register as a sex offender, possessing stolen firearms, and possessing firearms as a felon. Mead

4

pled guilty to the first two counts, and the government dismissed the third. Following Mead's plea, a probation officer submitted a Presentence Report ("PSR") to the district court recommending a sentencing range of 130 to 162 months, based on a final offense level of 27 and a criminal history category of VI. Pertinently, in calculating Mead's final offense level, the PSR asserted that two of Mead's prior convictions – including a 1996 conviction for attempted burglary in New York and the 2006 conviction for statutory rape – were for "crimes of violence" under § 2K2.1, as defined by § 4B1.2. Accordingly, the PSR stated that Mead's base offense level was 24, which, after the application of firearms enhancements and a reduction for acceptance of responsibility, resulted in a final offense level of 27.

Mead objected to the PSR's characterization of his statutory rape conviction as a conviction for a "crime of violence" under § 2K2.1 and § 4B1.2.[1] Following argument, the district court rejected Mead's objection and adopted the PSR's recommendation. In so ruling, the district court largely relied on *United States v. Daye*, 571 F.3d 225 (2d Cir. 2009), in which this Court held that violation of a Vermont law prohibiting sexual contact with a minor aged fifteen or younger

---

[1] Mead also challenged the categorization of his conviction for attempted burglary as being for a "crime of violence," an argument he does not renew on appeal.

constituted a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B). *See United States v. Mead*, No. 2:11-CR-87 (WKS), 2012 WL 3192670, at *2-5 (D. Vt. Aug. 2, 2012) (discussing *United States v. Daye*, 571 F.3d at 230-34). Noting the "identical" phrasing of the residual clauses of § 4B1.2 and the ACCA, the district court first determined that the provisions should be read coextensively. *Id.* at *3 (internal quotation marks omitted). The district court then compared N.Y.P.L. § 130.40-2 and the Vermont law and, finding that they reached similar conduct, read *Daye* to require a finding that violation of N.Y.P.L. § 130.40-2 constituted a "crime of violence" under § 2K2.1 and § 4B1.2. *Id.* at *4-5. In light of its ruling, the district court set Mead's base offense level at 24 – resulting in an advisory sentencing range of 130 to 162 months – and sentenced Mead to 130 months' imprisonment, to be served in two consecutive sixty-five month terms. Mead appealed.

**DISCUSSION**

Mead argues on appeal that violation of N.Y.P.L. § 130.40-2 does not constitute a "crime of violence" under § 4B1.2, and that the district court's finding to the contrary resulted in the application of an inflated base offense level. We

review *de novo* a district court's determination as to whether a prior offense was a "crime of violence" under the Guidelines. *See United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008).

Section 2K2.1 requires that defendants who have committed certain firearms offenses receive a base offense level of 24 "if the defendant committed any part of the [firearms] offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). Section 2K2.1 defines "crime of violence" by reference to § 4B1.2(a), which states:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Section 4B1.2(a)(1) is referred to as the "physical force clause." The first half of § 4B1.2(a)(2) contains the "exemplar crimes," and the second half the "residual clause."[2]

---

[2] An application note to § 4B1.2 contains additional interpretive material not at issue in this case. *See* U.S.S.G. § 4B1.2 app. n.1.

N.Y.P.L. § 130.40-2 prohibits a person aged twenty-one or older from engaging in oral or anal sexual conduct with a minor aged sixteen or younger. Because the law lacks a physical force element, it cannot be deemed a "crime of violence" under § 4B1.2(a)(1)'s "physical force" clause. Similarly, because the law does not concern any of the exemplar crimes, it cannot be deemed a "crime of violence" under § 4B1.2(a)(2)'s list of "exemplar crimes." Instead, violation of N.Y.P.L. § 130.40-2 may be deemed a "crime of violence" only under § 4B1.2(a)(2)'s "residual clause," which reaches crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another."

In interpreting the reach of § 4B1.2(a)(2)'s residual clause, we employ a categorical approach, with an eye to case law interpreting an identical clause in the ACCA that defines "violent felony." *See United States v. Gray*, 535 F.3d 128, 130 (2d Cir. 2008) (looking to ACCA precedent to interpret § 4B1.2 due to the provisions' "identical" operative language); *Taylor v. United States*, 495 U.S. 575, 602 (1990) (requiring "categorical" approach to interpreting ACCA). The categorical approach requires a court to consider an offense "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a

particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008) (citing *Taylor*, 495 U.S. at 602). Under this approach, "every conceivable factual offense covered by a statute . . . [need not] necessarily present a serious potential risk of injury before the offense can be deemed a violent felony," or, as it were, a crime of violence. *James v. United States*, 550 U.S. 192, 208 (2007). Instead, "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.*

In applying the categorical approach, the Supreme Court has distinguished between offenses that have "a stringent *mens rea* requirement," demanding that a defendant act knowingly, intentionally, or the like as to the core element or elements of the offense, and those offenses commonly characterized as sounding in strict liability, negligence, or recklessness. *See Sykes v. United States*, 131 S. Ct. 2267, 2275-76 (2011). For the former, an offense must pose a risk "similar in degree" to its "closest analog" among the exemplar crimes to qualify as a "violent felony" under the residual clause. *Id*. at 2273 (deeming vehicular flight to be a "violent felony" because it poses a risk similar to that of burglary or arson). By contrast, a strict liability, negligence, or recklessness offense must be similar *in kind* and pose a risk

similar in degree to qualify as a "violent felony" under the residual clause. *Begay*, 553 U.S. at 145; *see Sykes*, 131 S. Ct. at 2275-76 (limiting *Begay* to strict liability, negligence, and recklessness offenses). That is, to be deemed a "violent felony," an offense lacking a stringent *mens rea* requirement must not only "involve[] conduct presenting a serious potential risk of physical injury to another" but must also be "roughly similar" to the exemplar crimes by typically consisting of "purposeful, violent, and aggressive conduct" such that commission of the offense makes it "more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Begay*, 553 U.S. at 143, 145 (holding that driving under the influence is not a "violent felony" because the offense conduct is not "purposeful, violent, and aggressive").[3]

---

[3] Given this distinction, we reject Mead's argument that § 4B1.2 does not reach strict liability offenses. *Sykes* limited *Begay*'s "purposeful, violent, and aggressive" approach to strict liability, negligence, and recklessness crimes, strongly implying that such crimes may qualify as predicate offenses under the ACCA and § 4B1.2. *See Sykes*, 131 S. Ct. at 2277 (Thomas, *J.*, concurring) (criticizing majority for maintaining "purposeful, violent, and aggressive" test for strict liability crimes). We conclude, as in *Daye*, that the ACCA – and, by extension, § 4B1.2 – reaches offenses commonly characterized as strict liability offenses in appropriate circumstances, regardless of the absence of a stringent *mens rea* requirement as to particular elements. *See Daye*, at 571 F.3d at 233-34 (applying ACCA to Vermont statutory rape law because of the "deliberate and affirmative conduct" at issue).

Against essentially this landscape, we held that violation of a Vermont law that imposed strict liability for sexual contact with any minor under the age of sixteen constituted a "violent felony" under the ACCA.[4]  *Daye*, 571 F.3d at 234 (discussing 13 Vt. Stat. Ann. § 3252(3) (1986) (since amended)).  First, we found that sexual contact with a child – the crime contemplated by Vermont's law – posed a "serious potential risk of injury to another."  *Id.* at 230.  In so ruling, we cited multiple circuit court opinions detailing the risk of injury to young victims of sexual crimes, *id.* at 230-31 (quoting, *inter alia*, *United States v. Cadieux*, 500 F.3d 37, 45 (1st Cir. 2007) ("[C]rimes involving indecent sexual contact with a *child* typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures.") (emphasis added and internal quotation marks omitted)), while distinguishing opinions that noted the reduced risk to older teens on the ground that Vermont's statute "applie[d] only to children and young teens," defined in the law as those under sixteen.  *See id.* at 231 (citing *United States v. Sawyers*, 409 F.3d 732, 742 (6th Cir. 2005) and *United States v.*

---

[4] Though we issued *Daye* prior to the publication of *Sykes*, that *Sykes* limited *Begay* to strict liability, negligence, and recklessness offenses has no effect on our ruling there.

11

*Thomas*, 159 F.3d 296, 299-300 (7th Cir. 1998), which discussed the reduced risk sexual contact posed to sixteen-year-olds as compared to young children). We also noted that sexual contact with minors who are deemed legally unable to consent "for reasons of physical or emotional immaturity . . . inherently involves a substantial risk that physical force may be used in the course of committing the offense." *Id.* at 232 (internal quotation marks and emphasis omitted).

We next concluded that violation of the Vermont law required "purposeful, violent, and aggressive" conduct. We deemed the violation to be purposeful in the ordinary case on the ground that engaging in sexual contact with a child aged fifteen or younger necessitated "deliberate and affirmative conduct," and we deemed such conduct violent and aggressive on the ground that it "create[d] a substantial likelihood of forceful, violent, and aggressive behavior . . . because a child has essentially no ability to deter an adult from using . . . force to coerce the child into a sexual act." *Id.* at 233-34. This likely use of force assured us that, "[a]t a minimum, . . . a typical instance of this crime will involve conduct that is at least as intentionally aggressive and violent as a typical instance of burglary." *Id.* at 234. In reaching this conclusion, we distinguished a Tenth Circuit opinion that came to a

contrary result on the ground that, *inter alia*, the law at issue there "criminalized conduct involving substantially older victims." *Id.* at 235 (discussing *United States v. Dennis*, 551 F.3d 986, 990 (10th Cir. 2008) (holding that violation of law criminalizing "indecent liberties" with a person under the age of eighteen was not a violent felony)).

Like the Vermont law at issue in *Daye*, N.Y.P.L. § 130.40-2 imposes strict liability with regard to the age of the victim, and is therefore subject to *Begay*'s requirement that the prohibited conduct be similar in kind and in degree of risk to § 4B1.2's exemplar crimes in order to be deemed a "crime of violence." *See People v. Newton*, 8 N.Y.3d 460, 464, 867 N.E.2d 397, 399 (2007) (holding that a violation of § 130.40-2 is a strict liability offense). But unlike the Vermont law in *Daye*, N.Y.P.L. § 130.40-2's focus is not on *all* children from infancy to age fifteen, but principally on those minors who are fifteen and (pertinently) sixteen years old.[5] Under New York's statutory scheme, oral or anal sexual conduct with a child under the age of eleven (or under the age of thirteen, if the perpetrator is eighteen or older) constitutes the

---

[5] The all-inclusive Vermont statutory scheme addressed in *Daye* has since been amended to create a staggered scheme that accounts for age of the victim, age of the perpetrator, and, in the case of fifteen-year-old victims, the presence or absence of consent. *See* 13 Vt. Stat. Ann. § 3252; 13 Vt. Stat. Ann. § 3253.

most serious grade of New York's "criminal sexual act" offense involving children, and is a Class B felony. *Id.* § 130.50. Such contact with a child under the age of fifteen (provided the perpetrator is at least eighteen) is a Class D felony, a less serious grade. *Id.* § 130.45. Finally, section 130.40-2, the provision at issue here, extends to minors who are fifteen and sixteen (provided the perpetrator is at least twenty-one), and bears the lowest grade of criminal liability, constituting a Class E felony. *Id.* § 130.40-2. Thus, while offenders who engage in sexual contact with children and with young teens may also be charged pursuant to § 130.40-2, this provision, in the context of the larger statutory scheme, focuses on fifteen- and sixteen-year-old minors, as sexual conduct involving younger victims can be charged as one of the higher-graded offenses.

It is understandable that the district court viewed our decision in *Daye* as controlling. But we deem the differences between the Vermont provision at issue in *Daye* and the provision before us now to be material for purposes of § 2K2.1 and § 4B1.2. As an initial matter, courts considering the intersection of statutory rape laws and the ACCA or § 4B1.2 have routinely noted the difficulty presented by the "categorical" approach in this context. Statutory rape laws frequently encompass a

14

wide range of behavior, potentially criminalizing some conduct "in respect to which the offender need not have had any criminal intent at all," *Begay*, 553 U.S. at 145, but also reaching conduct – such as sexual contact with a toddler – that is almost invariably purposeful, violent, and aggressive. It is therefore difficult to determine what kind of conduct and degree of risk is present in the "ordinary" case, because it is difficult to determine what constitutes an "ordinary" case under such statutes. *See James*, 550 U.S. at 208 (noting that "proper inquiry" focuses on "the conduct encompassed by the elements of the offense, in the ordinary case"). Accordingly, courts deciding whether violation of a statutory rape law is "categorically" violent have often looked, *inter alia*, to the age of the protected minors to assess the typical character of the prohibited conduct, reasoning that laws penalizing sexual contact with young children will in the "ordinary" case present a risk of injury, whereas laws criminalizing such conduct with older, more mature minors may not. *Compare, e.g.*, *Sawyers*, 409 F.3d at 741-42 (holding that violation of Tennessee's statutory rape law, covering victims aged thirteen to seventeen, did not present a categorical risk of physical injury because, *inter alia*, "more mature victims" – that is, older teens – were included in the statute), *with United States v. Howard*, 754 F.3d 608, 610 (8th Cir.

15

2014) (holding violation of prohibition on sexual contact with a child "of a tender age (younger than fourteen years)" to be a violent felony but citing cases in which conviction for sexual abuse under statutes involving victims aged at least fourteen did not qualify).

As the Fourth Circuit recently recognized in *United States v. Rangel-Castaneda*, 709 F.3d 373, 377 (4th Cir. 2013), "the age of consent is central to the conception of statutory rape in every jurisdiction," but that age is not everywhere the same. Indeed, in interpreting U.S.S.G. § 2L1.2, which governs sentencing enhancements in illegal reentry cases, that court observed that the disagreement among states as to the age at which a minor is legally capable of consenting to sexual relations "engenders dramatically different crimes" from one jurisdiction to the next. *Id*. "In other words, conduct that is perfectly legal for some people could subject many others in neighboring states to years upon years in federal prison." *Id*. Surveying state and federal statutes, however, the court found that "a robust majority of American jurisdictions – the federal government, thirty-two states, and the District of Columbia – ha[ve] set the general age of consent precisely at sixteen years old." *Id*. at 377-78. The Model Penal Code and Black's Law Dictionary similarly recognize

sixteen as "the default age of consent." *Id.* at 378. In light of this consensus, and citing the need for "some degree of uniformity in applying the . . . Guidelines across the nation," the court held that sixteen was the "generic" age of consent for purposes of § 2L1.2.[6] *Id.* at 375, 378; *accord United States v. Rodriguez-Guzman*, 506 F.3d 738, 745–46 (9th Cir. 2007). Similarly, the Seventh Circuit, in holding that violation of a law prohibiting sexual conduct with persons aged thirteen to sixteen was not categorically a violent crime, noted that "in a majority of states [sixteen] is the age of consent" and therefore "it is difficult to maintain on a priori grounds that sex is physically dangerous to [sixteen]-year-old girls." *Thomas*, 159 F.3d at 299.

Such reasoning sufficiently distinguishes the statute at bar, N.Y.P.L. § 130.40-2, from the broader Vermont law in *Daye* that we are unable to conclude that violation of the New York law would, in the "ordinary" case, pose a "serious potential risk of physical injury to another" and require "purposeful, violent, and aggressive" conduct. The Vermont law in *Daye* criminalized sexual contact with *any*

---

[6] While we find the Fourth Circuit's analysis of § 2L1.2 instructive insofar as it surveys ages of consent across the country, we decline Mead's invitation to give § 2L1.2's commentary interpretive weight in analyzing § 4B1.2, in no small part because § 2L1.2 and § 4B1.2 are structured differently, phrased differently, and concern penalties for different types of crimes. *See, e.g.*, *United States v. Folkes*, 622 F.3d 152, 157 (2d Cir. 2010) (distinguishing § 2L1.2 and § 4B1.2); *United States v. Wynn*, 579 F.3d 567, 574-75 (6th Cir. 2009) (same); *United States v. Houston*, 364 F.3d 243, 247 n.5 (5th Cir. 2004) (same).

17

minor aged fifteen or younger, *see* 13 Vt. Stat. Ann. § 3252(3) (1986), and constituted Vermont's primary prohibition on sexual contact with children. The focus of § 130.40-2, by contrast, is not the universe of all children potentially victimized by adults, but fifteen- or sixteen-year-olds, specifically. In addition, N.Y.P.L. § 130.40-2 is structured as the least serious in a series of separate, escalating crimes penalizing sexual contact with minors. *See Sykes*, 131 S. Ct. at 2276 (suggesting that the existence of graded offenses in a statutory scheme may be relevant to the question whether prohibited conduct constitutes a violent felony for ACCA purposes); *id.* at 2293 (Kagan, *J.*, dissenting) (advocating that "a State's decision to divide a generic form of conduct . . . into separate, escalating crimes may make a difference under ACCA"); *cf. Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (permitting consideration of whether violation of one subset of a "divisible" statute that "creates several different . . . crimes" constitutes a violent crime under the ACCA). Considering the structure of New York's statutory scheme as a whole, and given that consensual sexual contact with sixteen-year-olds (who constitute a major portion of those minors protected by N.Y.P.L. § 130.40-2) would be lawful in many American jurisdictions, we are hard-pressed to conclude that the conduct at issue

would necessarily, in the "ordinary" case, pose a serious potential risk of physical injury to another or be generally purposeful, violent, and aggressive in character. *See Sykes*, 131 S. Ct. at 2279 (noting that "[c]ommon experience and statistical evidence" may be used to support intuition that offense does – or does not – rise to the level of "violent felony").

This remains so, moreover, despite the presence in New York's law of a requisite age difference between the victim and perpetrator – a provision so common in statutory rape laws that many of our sister circuits have declined even to mention such provisions when analyzing statutory rape statutes for purposes of § 4B1.2 or the ACCA. *See, e.g., United States v. Christensen*, 559 F.3d 1092, 1093–95 (9th Cir. 2009) *(*concluding that violation of Wash. Rev. Code § 9A.44.079, criminalizing sexual intercourse with a fourteen- or fifteen-year old child, was not categorically a violent felony, without any discussion of the statutory forty-eight-month age gap); *United States v. Thornton*, 554 F.3d 443, 445 n.2 (4th Cir. 2009) (holding that defendant's conviction under Va. Code § 18.2-63, which prohibits sexual contact with a thirteen- or fourteen-year old child, did not constitute a "violent felony," but declining to mention that the same statute would have graded defendant's conduct

as a misdemeanor in the event of an age gap of less than three years). The government alludes to this requirement and argues that "the justification for concluding that Mead's statute of conviction is categorically a crime of violence is, if anything, stronger than for the statutory rape law analyzed in *Daye*." But we are unpersuaded by this reasoning, considered in light of the counsel of cases from our sister circuits, the interest in "some degree of uniformity in applying the . . . Guidelines across the nation," *see Rangel-Castaneda*, 709 F.3d at 375, and the absence of any sufficiently compelling argument as to why this age differential is enough to establish, categorically, that N.Y.P.L. § 130.40-2 is a "crime of violence" pursuant to § 4B1.2, given the differences between the New York provision and the Vermont law in *Daye*.

This reluctance is reinforced by the fact that N.Y.P.L. § 130.40-2's narrow focus on older children and its inclusion of sixteen-year-olds – who have reached the typical age of consent – among its protected class renders immaterial here many of the factors that supported our ruling in *Daye.* For instance, in determining that violation of the Vermont law posed a "serious potential risk of physical injury" to minors, *Daye* relied in large part on circuit opinions discussing the risk that sexual

20

contact posed to children and young teens. However, those rulings are of limited use where, as here, we must consider the risk to older teens. *Daye* additionally relied on the legal inability of children to consent to sexual contact, noting that such legal incapacity reflected the children's "physical [and] emotional immaturity" and supported the intuition that violation of the Vermont law would "inherently involve[] a substantial risk that physical force may be used." 571 F.3d at 232 (emphasis and internal quotation mark omitted). But many of the minors protected by N.Y.P.L. § 130.40-2 *are* deemed capable of consent in a majority of jurisdictions, rendering *Daye*'s reliance on legal incapacity inapt here.

Thus, lacking any substantial basis on which to conclude that violation of N.Y.P.L. § 130.40-2 categorically poses "a serious potential risk of physical injury to another" and involves "purposeful, violent, and aggressive conduct," we decline to extend our holding in *Daye* to encompass this provision. This conclusion does not minimize either the seriousness of the risks associated with sexual relations between adults and older teens or the gravity of Mead's own violation of N.Y.P.L. § 130.40-2. We conclude only that, for purposes of the particular statutory provision before us, a conviction pursuant to N.Y.P.L. § 130.40-2 falls outside the scope of § 4B1.2 as

§ 130.40-2 is not categorically a "crime of violence" pursuant to that Guidelines provision. *See Descamps*, 133 S. Ct. at 2282 (holding that violation of broad burglary statute is not categorically a violent crime because "[i]n sweeping so widely, the state law goes beyond the normal, 'generic' definition of burglary").[7]

## CONCLUSION

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** for resentencing.

---

[7] Finally, we reject Mead's argument that § 4B1.2(a)(2)'s residual clause is unconstitutionally vague, noting that this argument has been implicitly repudiated by the Supreme Court on more than one occasion. *See, e.g., Sykes*, 131 S.Ct. at 2277 (observing that ACCA's identical residual clause "states an intelligible principle and provides guidance that allows a person to conform his or her conduct to the law") (internal quotation mark omitted). *See also United States v. Martin*, 753 F.3d 485, 494 n.3 (4th Cir. 2014) (citing *Sykes* in rejecting vagueness attack on § 4B1.2(a)(2)); *United States v. Spencer*, 724 F.3d 1133, 1145-46 (9th Cir. 2013) (same); *United States v. Cowan*, 696 F.3d 706, 708 (8th Cir. 2012) (same).